The ORIGINAL PIZZA PAN, Appellant,

v.

CWC SPORTS GROUP, INC., et al., Appellees.

[Cite as *Original Pizza Pan v. CWC Sports Group, Inc.*, 194 Ohio App.3d 50, 2011-Ohio-1684.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 95219.

Decided April 7, 2011.

Reminger Co., L.P.A., Nicholas D. Satullo, and Stephanie L. Seeley, for appellant.

Miller Goler Faeges, L.L.P., Steven J. Miller, and Deborah J. Michelson, for appellees.

MARY J. BOYLE, Presiding Judge.

{¶ 1} In June 2009, The Original Pizza Pan, an Ohio corporation, entered into an endorsement agreement with The Sports Link, Inc., a California corporation,

for the exclusive right to use Brian Robiskie's name and likeness for advertising purposes within the quick-service restaurant industry in Ohio. Robiskie played for the Cleveland Browns. Michael Ornstein, an employee of Sports Link, was Robiskie's agent who handled the negotiations with Pizza Pan.

{¶ 2} Frederick Peters, owner of Pizza Pan, averred that Robiskie sought him out because Robiskie "wanted to get his name out in the Cleveland market and was seeking endorsement opportunities." Robiskie met with Pizza Pan and negotiated an agreement, whereby Pizza Pan would have the exclusive rights to use Robiskie's name and likeness for advertising purposes. But one week later, Ornstein contacted Peters by phone and explained that Robiskie "could not enter into an endorsement agreement without his input and approval."

{¶ 3} Peters stated that throughout the negotiations with Sports Link and Ornstein, he made it clear to them that "it was very important for Pizza Pan to have this exclusive relationship, and the right to exclusivity was essential to Pizza Pan's decision to enter into the Endorsement Agreement." Peters further said that "Ornstein and Sports Link affirmatively represented to [him] that they had the authority to grant Pizza Pan the exclusive right to Robiskie's likeness for advertising purposes." Based on these representations, Pizza Pan signed the endorsement agreement drafted by Sports Link and Ornstein.

{¶ 4} At issue in this appeal, the contract also contained a forum-selection clause, which provided: "This Agreement shall be governed by the laws of the state of California without regard to conflicts of law principles and all actions hereunder shall be brought in the appropriate California state or federal court."

{¶ 5} According to Pizza Pan, approximately four months after it entered into the endorsement agreement with Sports Link, Donatos Pizza began offering a collector's cup with Robiskie's photo on it. Pizza Pan further alleged that Donatos was using Robiskie's likeness in various other mediums to promote its pizza.

{¶ 6} When Peters learned that Donatos was using Robiskie's likeness in its advertisements, he immediately confronted Ornstein. Peters averred, "At that time, Ornstein admitted that [Sports Link's] earlier representation that Pizza Pan would have the exclusive use of Robiskie's name and likeness within the quick-service restaurant industry was false," and that "Sports Link did not have the authority to promise exclusivity to Robiskie's name and likeness, despite its earlier representations." Peters further stated that Ornstein revealed to him, "for the first time, that Robiskie signed a group licensing agreement with the NFLPA, giving the NFLPA the right to use or negotiate the use of Robiskie's name and likeness," and that "[t]his was in direct contradiction to the statements that [Peters] had been assured earlier, that Pizza Pan would have the exclusive use of Robiskie's name and likeness within the quick-service restaurant industry."

{¶ 7} In November 2009, Pizza Pan sued Sports Link and Ornstein for fraud and negligent misrepresentation. Pizza Pan alleged that Sports Link and Ornstein negligently or intentionally concealed information and/or supplied false information, and as a result, Pizza Pan relied on this information to its detriment. Pizza Pan further maintained that had it known it would not have the exclusive right to use Robiskie's name, it would not have entered into the agreement or paid the same amount for nonexclusive rights.

{¶ 8} Rather than answer Pizza Pan's complaint, defendants moved to dismiss it. They raise three arguments for dismissal, contending that (1) pursuant to Civ.R. 12(B)(6), Pizza Pan failed to set forth cognizable claims for relief, (2) pursuant to Civ.R. 12(B)(2), the court lacked personal jurisdiction over them under Ohio's long-arm statute, and (3) the endorsement agreement contained a valid forum-selection clause prohibiting Pizza Pan's suit against defendants in Ohio.

{¶ 9} The trial court granted defendants' motion and dismissed Pizza Pan's complaint with prejudice because it found the forum-selection clause to be valid and applicable to Pizza Pan's fraud and negligent-misrepresentation claims. It is from this judgment that Pizza Pan appeals, claiming that the trial court erred in dismissing its complaint.[1]

## Forum–Selection Clause

{¶ 10} The enforceability of a forum-selection clause is a question of law that we review de novo. *Baker v. LeBoeuf, Lamb, Leiby & Macrae* (C.A.6, 1997), 105 F.3d 1102, 1104, citing *Shell v. R.W. Sturge, Ltd.* (C.A.6, 1995), 55 F.3d 1227. The party challenging the forum-selection clause bears a heavy burden of establishing that it should not be enforced. *Discount Bridal Serv., Inc. v. Kovacs* (1998), 127 Ohio App.3d 373, 376–377, 713 N.E.2d 30, citing *The Bremen v. Zapata Off–Shore Co.* (1972), 407 U.S. 1, 9–12, 92 S.Ct. 1907, 32 L.Ed.2d 513 *Barrett v. Picker Internatl.* (1990), 68 Ohio App.3d 820, 589 N.E.2d 1372.

{¶ 11} Because personal jurisdiction over a party is a right that may be waived, the use of a forum-selection clause is one method whereby contracting parties may agree to submit to the jurisdiction of a particular court. *Preferred Capital, Inc. v. Assoc. in Urology* (C.A.6, 2006), 453 F.3d 718, 721. In fact, "a minimum-contacts analysis as set forth in *Internatl. Shoe Co. v. Washington*

---

1. Although Pizza Pan raises three assignments of error for review, they are interrelated and thus, we will address them together. The assignments of error are: "[1.] The trial court erred in holding that appellant's claim for negligent misrepresentation must be filed in California. [2.] The trial court erred in holding that appellant's claim for fraud must be filed in California. [3.] The trial court erred in holding that the forum selection clause in the contract is applied for fraud and negligent misrepresentation."

(1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and its progeny, is not appropriate in determining the validity of forum selection clauses in commercial contracts." *Kennecorp v. Country Club Convalescent Hosp.* (1993), 66 Ohio St.3d 173, 175, 610 N.E.2d 987. Thus, "a forum selection clause contained in an arm's-length commercial transaction between two business entities is valid and enforceable, irrespective of the number of contacts involved with the forum state." Id. at 174.

{¶ 12} With this public policy in mind, the Ohio Supreme Court held in *Kennecorp* that "in the light of present-day commercial realities, * * * a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside." Id. at 175, citing *The Bremen*, 407 U.S. at 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (landmark decision overruling the traditional view that forum-selection clauses were against public policy). Thus, forum-selection clauses are "*prima facie* valid in the commercial context, so long as the clause has been freely bargained for," there is no evidence of fraud or overreaching, and "unless it can be clearly shown that enforcement of the clause would be unreasonable and unjust." Id.

{¶ 13} This court has held that "in order to invalidate the forum selection clause" when fraud is alleged in the contract, the fraud "must relate directly to the negotiation or acceptance of the forum selection clause itself, and not just to the contract generally." *Four Seasons Ents. v. Tommel Fin. Servs., Inc.* (Nov. 9, 2000), 8th Dist. No. 77248, 2000 WL 1679456. We further explained: "It is settled law that unless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause to agree to inclusion of that clause in the contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause. *Moses v. Business Card Express* (C.A.6, 1991), 929 F.2d 1131, 1138. Thus even if plaintiffs were induced to enter into the agreement by fraud, deceit and misrepresentation, this would not affect the validity of the forum selection clause. Id. at 1135." Id.

{¶ 14} In *Barrett*, this court analyzed a forum-selection clause under *The Bremen*, and held that the clause would be unreasonable or unjust if the "enforcement would violate the strong public policy of the forum state, *i.e.*, in this case, Ohio; and * * * that enforcement under the particular circumstances of the case would result in litigation in a jurisdiction so unreasonable, difficult and inconvenient that plaintiff would for all 'practical purposes be deprived of his day in court.'" Id., 68 Ohio App.3d at 824, 589 N.E.2d 1372, quoting *The Bremen*, 407 U.S. at 9–12, 92 S.Ct. 1907, 32 L.Ed.2d 513.

{¶ 15} We further explained in *Barrett* that "*Bremen* mandates an inquiry into the reasonab[leness] in the specific factual situation of applying the forum selection clause." To do so, we set forth several factors to consider "as guidelines" in determining if enforcement of the clause under the "specific factual situation" would be unreasonable or unjust. Id. at 825. These factors include "(1) which law controls the contractual dispute; (2) what residency do the parties maintain; (3) where will the contract be executed; (4) where are the witnesses and parties to the litigation located; and (5) whether the forum's designated location is inconvenient to the parties." Id., citing *Clinton v. Janger* (N.D.Ill. 1984), 583 F.Supp. 284.

{¶ 16} In this case, it was incumbent upon Pizza Pan to present sufficient evidentiary material supporting the invalidity of the clause. See *Discount Bridal*, 127 Ohio App.3d at 376, 713 N.E.2d 30.

Analysis

{¶ 17} In its brief in opposition to defendants' motion to dismiss, Pizza Pan focused its arguments on maintaining that it had sufficiently set forth claims of negligent misrepresentation and fraud in its complaint and, further, that the trial court had personal jurisdiction over the nonresident defendants under Ohio's long-arm statute. In fact, in 20 out of 21 pages of its opposition brief, Pizza Pan focused only on those two arguments. On the 21st page, in one paragraph, Pizza Pan argued that "[t]he forum selection clause is not relevant to these claims," because it did not bring a breach-of-contract claim, but rather fraud and misrepresentations claims. Pizza Pan argues to this court that it "specifically did not bring a breach of contract claim, to make this very point." But the forum-selection clause here requires that "all actions hereunder shall be brought in the appropriate California state or federal court." Thus, Pizza Pan's argument lacks merit.

{¶ 18} Pizza Pan does not assert that the forum-selection clause was the product of fraud or overreaching. Nor does it claim that enforcement of the forum-selection clause would violate any "strong public policy" of Ohio. But Pizza Pan does contend that enforcement of the clause would be unreasonable and unjust. Mainly, Pizza Pan argues that under the *Barrett* factors, enforcement would be not only "gravely inconvenient" but unjust because (1) Pizza Pan is an Ohio corporation and all negotiations were done in Ohio, (2) all of the relevant witnesses are in Ohio, and (3) it would be deprived of its day in court because it could not subpoena Robiskie or Donatos to California to prove its case. Pizza Pan argues that "the trial court failed to evaluate" the *Barrett* factors to determine if enforcement would be unjust or unreasonable, and it asks this court

to reverse the trial court's dismissal and remand for its consideration of these factors.

{¶ 19} But we find it significant that Pizza Pan failed to raise any of these issues to the trial court. Because Pizza Pan argued only that the forum-selection clause was "not relevant" to its claims, it failed to raise any argument regarding the reasonableness of enforcement to the trial court. The trial court was therefore without any evidence to evaluate these factors—since it was not in the record. And there is limited evidence in the record on appeal to support Pizza Pan's arguments with respect to the forum-selection clause being unreasonable or unjust. Peters's affidavit focuses mainly on establishing that Sports Link and Ornstein concealed or intentionally misrepresented exclusivity, not any facts to support its argument here that it would be unreasonable or unjust to enforce the clause.

{¶ 20} What we do know from the record is that Pizza Pan is a commercial entity—with approximately 50 franchises throughout Ohio. And although Sports Link drafted the endorsement agreement, it is a straightforward, uncomplicated agreement, and Pizza Pan does not allege any undue influence or unequal bargaining power. When Pizza Pan received the agreement from Sports Link, it could have altered it or negotiated different terms. Indeed, there are handwritten notes modifying certain terms on the typed contract, which were initialed by Peters and Robiskie. There is no reason that Pizza Pan could not have also crossed out the forum-selection clause—if it did not agree to that term.

{¶ 21} As the United States Supreme Court made clear in *The Bremen*:

{¶ 22} "This case * * * involves a freely negotiated international commercial transaction between a German and an American corporation * * *. As noted, selection of a London forum was clearly a reasonable effort to bring vital certainty to this international transaction and to provide a neutral forum experienced and capable in the resolution of admiralty litigation. Whatever 'inconvenience' Zapata would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting. In such circumstances it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." 407 U.S. at 17–18, 92 S.Ct. 1907, 32 L.Ed.2d 513.

{¶ 23} Here, there is simply nothing in the record to establish that California will be so gravely difficult and inconvenient for Pizza Pan that it would be denied

its day in court. Pizza Pan will still have its day in court; it will just have to be in California.

Judgment affirmed.

CELEBREZZE and SWEENEY, JJ., concur.