[Cite as *Zilbert v. Proficio Mtge. Ventures, L.L.C.*, 2014-Ohio-1838.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100299**

# ROGER ZILBERT

PLAINTIFF-APPELLANT

vs.

# PROFICIO MORTGAGE VENTURES, L.L.C., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-805479

**BEFORE:** Blackmon, J., Jones, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 1, 2014

**ATTORNEY FOR APPELLANT**

Brian D. Spitz
The Spitz Law Firm, L.L.C.
4568 Mayfield Road
Suite 102
South Euclid, Ohio 44121


**ATTORNEYS FOR APPELLEES**

James R. Pearl
Law Office of James R. Pearl, Jr.
9393 Olde Eight Road
Northfield, Ohio 44067

Jay E. Krasovec
Jonathon W. Groza
Ice Miller, L.L.P.
Fifth Third Center
600 Superior Avenue, East
Suite 1701
Cleveland, Ohio 44114

PATRICIA ANN BLACKMON, J.:

**{¶1}** Appellant Roger Zilbert ("Zilbert") appeals the trial court's decision granting the motion to stay pending arbitration of appellee Proficio Mortgage Ventures, L.L.C. ("Proficio") and two of its employees, Mark Nagy ("Nagy") and Todd Liguzinski ("Liguzinski"). Zilbert assigns the following errors for our review:

I. The trial court committed reversible error in granting appellees' motion to stay pending arbitration in Salt Lake City, Utah, as the forum selection clause contained in the employment agreement is overreaching and substantively unconscionable because it has the effect of blocking most claims.

II. The trial court erred in granting appellees' motion to stay pending arbitration when Zilbert's claims clearly fall outside the scope of the employment agreement as drafted solely and exclusively by appellees.

III. The trial court committed reversible error when it stayed Zilbert's claim against Nagy and Liguzinski, as they are not parties to, and thus, cannot enforce the arbitration provision.

IV. The trial court erred in finding the arbitration agreement valid and enforceable because the manner in which it was executed was procedurally unconscionable.

**{¶2}** Having reviewed the record and pertinent law, we affirm in part, and reverse in part, the trial court's decision. The apposite facts follow.

**{¶3}** On May 31, 2012, Zilbert commenced employment with Proficio as a mortgage loan officer. Zilbert signed an employment agreement ("Employment Agreement") contemporaneously with his hiring. On August 15, 2012, Proficio terminated Zilbert.

**{¶4}** On April 23, 2013, Zilbert filed a wrongful termination complaint against Proficio, Nagy, and Liguzinski. Zilbert, who is of the Jewish faith, alleged causes of

action for retaliatory discrimination, religious discrimination, wrongful termination based on religious discrimination, intentional infliction of emotional distress, and violation of public policy.

{¶5} On May 14, 2013, Proficio, Nagy, and Liguzinski ("appellees") filed a motion to dismiss Zilbert's complaint or in the alternative a motion to order arbitration, or motion to stay the action pending resolution of arbitration. Appellees argued Zilbert's complaint should be dismissed due to improper venue and the trial court's lack of subject matter jurisdiction because of a mandatory arbitration clause contained in the Employment Agreement signed by the parties.

{¶6} On June 3, 2013, Zilbert filed his motion in opposition to appellees' motion. On June 7, 2013, appellees filed a response to Zilbert's motion in opposition. On August 16, 2013, the trial court denied appellees' motion to dismiss. The trial court granted appellees' alternative motion to stay the action pending resolution of arbitration after finding the Employment Agreement to be valid and enforceable. Zilbert now appeals.

**Stay Pending Arbitration**

{¶7} In the first assigned error, Zilbert argues the trial court erred when it granted the motion to stay pending arbitration in Salt Lake City, Utah.

{¶8} Preliminarily, we note when addressing whether a trial court has properly granted a motion to stay and compel arbitration, the appropriate standard of review

depends on "the type of questions raised challenging the applicability of the arbitration provision." *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7.

{¶9} Generally, an abuse of discretion standard applies; for example, when the issue to be determined is whether a party has waived its right to arbitrate a given dispute. *Id.*, citing *Milling Away, L.L.C. v. UGP Properties, L.L.C.*, 8th Dist. Cuyahoga No. 95751, 2011-Ohio-1103, ¶ 8. Additionally, when the issue is whether a party has agreed to submit an issue to arbitration or questions of unconscionability are raised, we review the matter under a de novo standard of review. *Shumaker v. Saks Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393 (8th Dist.); *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12.

{¶10} In the instant case, we apply a de novo standard of review because we are reviewing the trial court's decision to grant a motion to stay after finding that the claims are subject to arbitration. The abuse of discretion standard of review has no application in the context of the court deciding to stay proceedings pending the outcome of arbitration because a stay in such circumstances is mandatory, not discretionary. *N. Park Retirement Community Ctr., Inc. v. Sovran Cos., Ltd.,* 8th Dist. Cuyahoga No. 96376, 2011-Ohio-5179, ¶ 7 (recognizing that R.C. 2711.02(B) imposes a mandatory duty to stay the proceedings, leaving no discretion for the trial court upon being satisfied that the matter was subject to arbitration); *see also McCaskey* at ¶ 9. "Under a de novo standard of review, we give no deference to a trial court's decision." *Brownlee v. Cleveland Clinic*

*Found.*, 8th Dist. Cuyahoga No. 97707, 2012-Ohio-2212, citing *Akron v. Frazier*, 142 Ohio App.3d 718, 721, 756 N.E.2d 1258 (9th Dist.2001).

**{¶11}** Ohio courts recognize a presumption favoring arbitration when the issue of the parties' dispute falls within the scope of the arbitration provision. *Taylor Bldg. Corp. of Am. v. Benfield,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 27. In light of this strong presumption favoring arbitration, all doubts should be resolved in its favor. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15.

**{¶12}** Arbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute. *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 712, 590 N.E.2d 1242 (1992). Thus, if a dispute even arguably falls within the parties' arbitration provision, the trial court must stay the proceedings until arbitration has been completed. *Fields v. Herrnstein Chrysler, Inc.,* 4th Dist. Pike No. 12CA827, 2013-Ohio-693, ¶ 15, citing *Tomovich v. USA Waterproofing & Foundation Servs., Inc.,* 9th Dist. Lorain No. 07CA9150, 2007-Ohio-6214, ¶ 8.

**{¶13}** Ohio's strong public policy favoring arbitration is codified in Chapter 2711 of the Revised Code. *Westerfield v. Three Rivers Nursing & Rehab. Ctr., L.L.C.,* 2d Dist. Montgomery No. 25347, 2013-Ohio-512, ¶ 17. Under R.C. 2711.02(B) on application of one of the parties, a trial court may stay litigation in favor of arbitration pursuant to a written arbitration agreement. *Taylor Bldg.,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 28. R.C. 2711.02(B) provides:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is

> pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

Thus, R.C. 2711.02 requires a court to stay the trial of an action "on application of one of the parties if (1) the action is brought upon any issue referable to arbitration under a written agreement for arbitration[;] (2) the court is satisfied the issue is referable to arbitration under the written agreement[;] and (3) the applicant is not in default in proceeding with arbitration." *Fields*, 4th Dist. Pike No. 12CA827, 2013-Ohio-693, ¶ 14.

{¶14} In the instant case, Page 5, Paragraph 22 of the Employment Agreement captioned "Waiver of Litigation or Trial by Jury" states as follows:

> THE PARTIES HEREBY WAIVE LITIGATION AND TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH THEY MAY BE PARTIES, ARISING OUT OF, OR IN ANY WAY PERTAINING OR RELATED TO, THIS AGREEMENT.  IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A GENERAL WAIVER OF LITIGATION AND TRIAL BY JURY FOR ALL CLAIMS, INCLUDING THOSE AGAINST PARTIES WHO ARE NOT PARTIES TO THE AGREEMENT.  EMPLOYER AND EMPLOYEE BOTH UNDERSTAND AND ACCEPT THAT ALL PROCEEDINGS WILL BE MANAGED THROUGH BINDING ARBITRATION.  THIS WAIVER IS KNOWINGLY, WILLINGLY, AND VOLUNTARILY MADE BY EACH OF THE PARTIES HERETO, AND THE PARTIES HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OR TO, IN ANY WAY, MODIFY OR NULLIFY ITS EFFECT.

{¶15} It is undisputed that the arbitration agreement was part of the Employment Agreement that Zilbert signed. The arbitration clause is conspicuously written in all capital letters.   The clause is clear and unambiguous.

**{¶16}** On May 31, 2012, Zilbert acknowledge the terms of the Employment Agreement, including the arbitration agreement, by initialing each page of the six-page document and by affixing his signature to the last page of the document. Approximately two weeks later, the authorized branch and corporate signatures were affixed to the same document.

**{¶17}** In his affidavit, Zilbert averred that he was excited about the offer of a job with Proficio, that he was given the Employment Agreement to sign, that he signed it believing that it was necessary to proceeding with his employment, and that he did not understand the implications or consequences of arbitration. However, it is one of the most basic tenets of contract law that a document should be read before being signed, and further that a party to a contract is presumed to have read what he or she signed and thus cannot defeat a contract by asserting he or she did not read it. *See, e.g.*, *Hadden Co., L.P.A. v. Del Spina*, 10th Dist. Franklin No. 03AP-37, 2003-Ohio-4507, ¶ 15. Consequently, by initialing and signing the document, Zilbert demonstrated his agreement to be bound by the arbitration clause. *See Cole v. Macy's, Inc.,* 8th Dist. Cuyahoga No. 99502, 2013-Ohio-4705. Consequently, the trial court did not err when it found the arbitration clause valid and enforceable.

**{¶18}** Nonetheless, on appeal, Zilbert argues the forum selection clause contained on Page 5, Paragraph 20 of the Employment Agreement was unconscionable.

**{¶19}** Parties to a contract may agree to submit to the jurisdiction of a particular court through the use of a forum-selection clause. *Natl. City Commercial Capital Corp.*

*v. All About Limousines Corp.,* 12th Dist. Butler No. CA2005-08-226, 2009-Ohio-1159, ¶ 7. The Employment Agreement in the instant case contains the following choice of law and forum selection clause:

> *Applicable Law: Jurisdiction*: This agreement shall be governed by, and construed in accordance with, the laws of the State of Utah (without regard to conflicts of laws principle), irrespective of the fact that a party is or may become a resident of a different state, and by applicable federal laws of the United States of America. To the maximum extent permissible under Law, both parties hereby agree that the Circuit Court of Salt Lake City, State of Utah, shall have exclusive jurisdiction to hear and determine any and all disputes, controversies, or claims arising out of, or relating to, this Agreement, or concerning the respective rights of the parties hereunder and, for such purpose, the parties do hereby submit themselves to the sole personal jurisdiction of that court.

**{¶20}** Forum selection clauses are "presumptively valid" and have generally been enforced. *Conway v. Huntington Natl. Bank*, 10th Dist. Franklin No. 11AP-1105, 2013-Ohio-1201. A forum selection clause will be enforced unless the party opposed to its enforcement establishes: (i) it is a result of fraud or overreaching; (ii) enforcement would violate a strong public policy of the forum; or (iii) enforcement would, in the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. *Id.*

**{¶21}** In regard to the first factor, Zilbert does not argue that he signed the Employment Agreement as a result of fraud and overreaching by Proficio. Also, Zilbert has produced no evidence that Proficio made any false representations in inducing him to agree to the forum selection clause. Consequently, such a clause would generally be

valid and enforceable. *Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp. Inc.*, 66 Ohio St.3d 173, 176, 610 N.E.2d 987 (1993).

**{¶22}** In *Kennecorp*, for example, the Ohio Supreme upheld the forum selection clause that had been agreed to by two sophisticated commercial entities. Thus, where both parties to a contract are *commercial entities* and the contract contains a valid forum-selection clause, the clause generally cannot be invalidated by the common-law doctrine of forum non conveniens. *Information Leasing Corp. v. Baxter*, 1st Dist. Hamilton No. C-020029, 2002-Ohio-3930, ¶ 8, 12.

**{¶23}** Here, however, the contract was an employment contract rather than a contract between two sophisticated business entities. In *Deaconess Homecare, Inc. v. Waters*, 1st Dist. Hamilton No. C-990277, 1999 WL 1488974 (Dec. 8., 1999), the First Appellate District held that "although the employment contract contained a forum-selection clause, the contract was not a commercial contract requiring enforcement without looking at other factors." *Id.* at *1.

**{¶24}** In regard to the second factor, as previously noted, Ohio recognizes the validity of forum selection clauses, and enforcement of the clause would not violate the public policy of Ohio. Thus, this factor does not weigh in favor of nonenforcement.

**{¶25}** As to the third factor, Zilbert has the burden of establishing that it would be unreasonable or unjust to enforce the forum selection clause. *Preferred Capital, Inc. v. Ferris Bros., Inc.,* 167 Ohio App.3d 653, 2005-Ohio-6221, 856 N.E.2d 984 (9th Dist.).

A finding of unreasonableness or injustice must be based on more than inconvenience to the party seeking to avoid the forum selection clauses' requirements. *Id.*

{¶26} Thus, mere distance, mere expense, or mere hardship to an individual litigant is insufficient to invalidate a forum selection clause. *Salehpour v. Just A Buck Licensing, Inc.,* 12th Dist. Warren No. CA2013-03-028, 2013-Ohio-4436, citing *IntraSee, Inc. v. Ludwig,* 9th Dist. Lorain Nos. 10CA009916 and 11CA010024, 2012-Ohio-2684, ¶ 20. Rather, it must appear that enforcement of the clause would be manifestly and gravely inconvenient to the party seeking to avoid enforcement such that it will effectively be deprived of a meaningful day in court. *Info. Leasing Corp. v. Jaskot*, 151 Ohio App.3d 546, 552, 2003-Ohio-566, 784 N.E.2d 1192 (1st Dist.).

{¶27} In determining whether the selected forum is sufficiently unreasonable, Ohio courts consider the following factors: (1) which law controls the contractual dispute; (2) the residency of the parties; (3) where the contract was executed; (4) where the witnesses and parties to the litigation are located; and (5) whether the forum clause's designated location is inconvenient to the parties. *Original Pizza Pan v. CWC Sports Group, Inc.,* 194 Ohio App.3d 50, 2011-Ohio-1684, 954 N.E.2d 1220 (8th Dist.), citing *Barrett v. Picker Internatl.,* 68 Ohio App.3d 820, 589 N.E.2d 1372 (8th Dist.1990).

{¶28} In regard to the first factor, as previously stated, the Employment Agreement includes a choice of law provision that states that the enforcement of the Agreement is governed by Utah law. Assuming that this provision is valid and enforceable, Proficio would receive the benefit of its choice of law even if the case is tried in Ohio, since the

courts in Ohio would be capable of applying Utah law. No argument has been made that Ohio law regarding employment discrimination differs from Utah law in any significant respect. Therefore, this factor does not weigh heavily in favor of one jurisdiction over the other.

{¶29} As to the second factor, Proficio is a Delaware corporation, with its principal place of business in the city of Orlando, Orange County, Florida. However, Proficio maintained and operated an office located at 6100 Rockside Woods Boulevard, Independence, Ohio. Plaintiff Zilbert, as well as defendants Nagy and Liguzinski are residents of Ohio. As to the third factor, the Employment Agreements were signed and executed in Ohio. As to the fourth factor, most, if not all, of the witnesses in this litigation are located in Ohio.

{¶30} In regard to the fifth factor, since Zilbert, Nagy, and Liguzinski all live in Ohio, Utah is not a convenient forum for them. Furthermore, although Utah is Proficio's forum of choice, it has not shown how Utah would be a more convenient forum for them. Although Proficio is a Delaware corporation, it conducts business in Ohio. Most, if not all, of the witnesses and evidentiary materials relevant to the action are in Ohio, which is the location of Proficio's offices where Zilbert, as well as where two defendants worked. Thus, it appears that Utah is not a convenient forum for litigating this action from Proficio's perspective, either.

{¶31} Weighing the above factors, we find that enforcing the forum selection clause in this case would result in litigation in a jurisdiction so unreasonable, difficult,

and inconvenient to create a considerable risk that Zilbert would be deprived of his day in court. The degree of distance between the two states would contribute to a significant increase in the cost of litigating this action for Zilbert, as well as for defendants Nagy and Liguzinski. Zilbert was making a modest salary. He might have difficulty securing witnesses because of the increased cost of witness fees involved in litigating the action in Utah. Zilbert and any witnesses traveling to Utah would be seriously inconvenienced by the need to obtain extended leave from jobs or to cover familial obligations.

{¶32} In light of the above analysis, we find that although the arbitration clause was valid, the forum selection clause should not be enforced in this case. In reaching this decision, we are not advocating that a forum selection clause in an employment contract should never be enforced, or freely invalidated, but we do find that the type of contract can make a difference in determining whether to uphold such a clause.

{¶33} For example, although not in the employment context, this court has declined to enforce a forum selection clause in an agreement between a noncommercial entity and an unsophisticated not-for-profit entity. *Copelco Capital, Inc. v. St. Mark's Presbyterian Church*, 8th Dist. Cuyahoga No. 77633, 2001 Ohio App. LEXIS 315 (Feb.1, 2001). The particular circumstances presented in this case, when considered as a whole, sufficiently warrants the invalidation of the forum selection clause. Accordingly, we overrule in part, and sustain in part, the first assigned error.

### Scope of Arbitration

**{¶34}** In the second assigned error, Zilbert argues that his claims fell outside the scope of the arbitration agreement. Thus, the trial court should have denied the motion to stay.

**{¶35}** In his complaint, Zilbert specifically alleged that he regularly worked 50 to 60 hours per week and was not compensated for the overtime hours in excess of 40 hours per week. Zilbert alleged that upon complaining to his supervisors, they began retaliating by making disparaging, anti-Semitic, comments, and jokes. Zilbert alleged that after announcing his intentions to quit, if the discriminatory conduct did not cease, he was terminated.

**{¶36}** A review of Zilbert's allegations reveal that they all arose out of the course and scope of his employment with Proficio. Because they arose out of the course and scope of his employment, they are subject to the arbitration agreement contained in the Employment Agreement that Zilbert signed. The arbitration agreement specifically states that the parties waive litigation and trial by jury in any action arising out of or relating to the Employment Agreement.

**{¶37}** Based on the foregoing, the trial court did not err when it found that Zilbert's claims fell under the auspices of the arbitration agreement. Accordingly, we overrule the second assigned error.

### Non-Signatories to Arbitration Agreement

**{¶38}** In the third assigned error, Zilbert argues the trial court erred when it stayed his claims against Nagy and Liguzinski, who were not parties to the agreement.

{¶39} Generally, non-signatories to a contract are not subject to its provisions. Nonetheless, in some circumstances non-signatories to contracts can be contractually bound by ordinary contract and agency principles. *Sovran*, 2011-Ohio-5179, ¶ 17, citing *Short v. Resource Title Agency, Inc.*, 8th Dist. Cuyahoga No. 95839, 2011-Ohio-1577, ¶ 14.

{¶40} In the instant case, although Zilbert alleged in his complaint that both Nagy and Liguzinski were acting in the course and scope of their employment for Proficio, he now contends that his claims against them are not covered by the arbitration agreement. However, the arbitration agreement is very broad and encompasses any dispute arising out of or related to the Employment Agreement.

{¶41} Further, the arbitration agreement specifically states: "It is agreed and understood that this waiver constitutes a general waiver of litigation and trial by jury for all claims, including those against parties who are not parties to this agreement." This provision clearly encompasses disputes between signatories and non-signatory employees acting in the course and scope of their employment with Proficio.

{¶42} Because the arbitration agreement covers all claims arising out of the employment relationship and even applies to disputes involving non-parties to the agreement, the trial court did not err when it stayed Zilbert's claims against Nagy and Liguzinski. Accordingly, we overrule the third assigned error.

## Procedural Unconscionability

**{¶43}** In the fourth assigned error, Zilbert argues that the trial court erred in granting the motion to stay because the arbitration clause is procedurally unconscionable.

**{¶44}** In determining whether an agreement is procedurally unconscionable, courts consider the relative bargaining positions of the parties including each party's age, education, intelligence, experience, and who drafted the contract. *Taylor* at ¶ 44. No single factor alone determines whether a contract is procedurally unconscionable; a court must consider the totality of the circumstances. *Murea v. Pulte Group, Inc.,* 8th Dist. Cuyahoga No. 100127, 2014-Ohio-398, citing *Oakridge Home,* 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408 at ¶ 29-30. There is no evidence in the record regarding Zilbert's age, educational background, business acumen, or experience.

**{¶45}** An important consideration is "whether each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print * * *?" *Blackburn v. Ronald Kluchin Architects, Inc.,* 8th Dist. Cuyahoga No. 89203, 2007-Ohio-6647, ¶ 29, quoting *Vanyo v. Clear Channel Worldwide*, 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482 (8th Dist.), ¶ 18, citing *Ohio Univ. Bd. of Trustees v. Smith*, 132 Ohio App.3d 211, 724 N.E.2d 1155 (4th Dist.1999).

**{¶46}** Here, given that he was being hired as mortgage loan officer, Zilbert was objectively capable of understanding the provisions included in the Employment Agreement. There are no allegations that an infirmity or incapacity impacted Zilbert's

ability to understand the provisions of the Employment Agreement. As previously stated, the arbitration agreement was clearly written in capital letters and was unambiguous.

{¶47} In addition, although Zilbert generally claims that he felt rushed and hurried, he has put forth no evidence that he was coerced into signing the Employment Agreement. The record reveals that approximately two weeks passed between Zilbert's signing the Employment Agreement and the time the authorized branch and corporate signatures were affixed to the document. Thus, arguably, Zilbert had the opportunity to read the Employment Agreement.

{¶48} Further, although Zilbert claims that he believed he had to sign the Employment Agreement in order to proceed with the job, his affidavit is devoid of any evidence that he was told he could be denied the position if he wanted to take time to read the Employment Agreement or have it reviewed by counsel. There is no evidence of procedural unconscionability under these circumstances. As such, the trial court did not err when it found the arbitration agreement to be valid and enforceable. Accordingly, we overrule the fourth assigned error.

{¶49} Judgment affirmed in part, reversed in part, and remanded to the trial court to order that arbitration be conducted in Ohio.

It is ordered that appellees and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

LARRY A. JONES, SR., P.J., and
SEAN C. GALLAGHER, J., CONCUR