[Cite as *Inventiv Health Communications, Inc. v. Rodden*, 2018-Ohio-945.]

woCOURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| INVENTIV HEALTH COMMUNICATIONS, INC., | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| Plaintiff - Appellant/ | : | Hon. Craig R. Baldwin, J. |
| Cross-Appellee | : | |
| | : | -vs- |
| | : | |
| JENNIFER RODDEN, | : | Case No. 17 CAE 09 0066 |
| | : | |
| Defendant - Appellee/ | : | O P I N I O N |
| Cross- Appellant | : | |

CHARACTER OF PROCEEDING:      Appeal from the Delaware County
Court of Common Pleas, Case No.
17-CVH-04-0259

JUDGMENT:      Affirmed in part, Reversed
and Remanded in part

DATE OF JUDGMENT:      March 12, 2018

APPEARANCES:

For Plaintiff-Appellant/ Cross-Appellee      For Defendant-Appellee/Cross- Appellant

ROBERT BOWES
Derek E. Diaz      NICK A. NYKULAK
Hahn Loeser & Parks LLP      AMILY A. IMBROGNO
200 Public Square, Suite 2800      Ross, Brittain & Schonberg
Cleveland, Ohio 44114      6480 Rockside Woods Blvd. South,
Suite 350
ELISE K. YARNELL      Cleveland, Ohio 44131
Hahn Loeser & Parks LLP
65 East State St. Suite 1400
Columbus, Ohio 43215

*Baldwin, J.*

**{¶1}**   Plaintiff-appellant inVentiv Health Communications, Inc. appeals from the August 18, 2017 Judgment Entry of the Delaware County Court of Common Pleas granting the Motion to Dismiss filed by defendant-appellee Jennifer Rodden. Defendant-appellee Jennifer Rodden has filed a cross-appeal.

## STATEMENT OF THE FACTS AND CASE

**{¶2}**   Appellee Jennifer Rodden, a resident of North Carolina, began working in April of 2010 as an administrative assistant for Addison Whitney, which is located in North Carolina. Addison Whitney is a wholly-owned subsidiary of appellant inVentiv Health Communications which is located in Ohio and has its principal place of business in Ohio. According to appellant, the two companies are affiliates.

**{¶3}**   On or about April 10, 2010[1], appellee signed an "Acknowledgement and Agreement" that was attached to appellant's "Code of Ethics and Business Conduct." Such form states, in relevant part, as follows:

> I   have   read   and   I   understand   the   foregoing   inVentiv Communications, Inc. *Code of Ethics and Business Conduct* dated May 28, 2009 (the "Code") and by executing this Agreement, I hereby acknowledge my agreement to comply with those obligations and responsibilities set forth in the Code and to be bound by the Code as a condition of my continued status as a[n]…employee of …inVentiv Communications Inc. or any of its affiliates companies (collectively, the "Company") [.]

---

[1] The date that appellee signed the Acknowledgement and Agreement is unclear. It appears that she signed it on either April 10, 2010 or April 12, 2010. The trial court found that she had signed the agreement on April 12, 2010.

**{¶4}** The inVentiv Agreement specifically prohibits company representatives, including all employees of appellant and its affiliates, from disclosing confidential information, engaging in any fraud, theft or similar conduct, or engaging in any Restricted Activity in the Restricted Area for two years following termination of employment with appellant or its affiliates. The inVentiv Agreement defines "Restricted Activity" as follows:

[S]oliciting to provide or providing advertising, public relations, branding, health outcomes, medical education, and/or any other marketing or similar services offered by the Company to any person or entity which (a) was a client of the Company at any time during the last twelve months in which the Company Representative was employed with the Company, or (b) was an Active Client Prospect of the Company (i.e. a person or entity with whom there had been contact by someone at the Company within the 90-day period immediately preceding such termination of employment) at the time of the Company Representative's termination of employment with the Company. For purposes hereof, the term "Restricted Area" means the United State of America.

**{¶5}** The inVentiv Agreement also contains a forum selection clause providing that it would be governed and construed in accordance with laws of the state of Ohio. The forum selection clause further states as follows: "I hereby consent to the exclusive jurisdiction and venue of any state or federal court in Ohio to consider any claims related to the interpretation or enforcement of any provision of the Code or this Agreement or any other related claims." Additionally, the agreement further states, in relevant part, that

"[t]his instrument and the terms of the Code constitute the entire agreement between the parties with respect to the subject matter hereof."

{¶6}   Appellee, on April, 12, 2010, also signed an "Employee Confidentiality and Non-Compete Agreement" with Addison Whitney which included its subsidiaries or affiliates, including appellant. Addison Whitney's representative signed the same on April 14, 2010. Pursuant to the terms of the agreement, appellee agreed that she would not directly or indirect compete with Addison Whitney for a period of one year after termination of her employment. She further agreed that during her employment with Addison Whitney and for one year following her termination, she would not:

Either on [her] behalf of any other person or entity, directly or indirectly (a) hire, solicit or encourage or induce any employee, director, consultant, contractor or subcontractor to leave the employ of Addison Whitney, or (b) solicit, induce, encourage or entice away or divert any person or entity which is then a customer of Addison Whitney and which was a customer of Addison Whitney during the term of Employee's employment.

{¶7}   While the Addison Whitney Agreement contains a North Carolina choice of law clause, it does not contain a forum selection clause. The Addison Whitney Agreement further provides that it represented the entire agreement between appellee and Addison Whitney "with respect to the subject matter hereof, superseding all previous oral or written communications, representations, understanding or agreement relating to this subject."

{¶8} In January of 2017, appellee, who had been a Senior Project Manager for Addison Whitney since 2014, resigned from Addison Whitney and, along with five other Addison Whitney employees, contemplated forming a competing company.

{¶9} On January 30, 2017, Addison Whitney filed a complaint in North Carolina against appellee and her former co-workers. On April 14, 2017, appellant filed a complaint in Ohio against appellee, alleging that she had breached her contractual obligations to appellant and had misappropriated appellant's confidential and proprietary information. Appellant sought injunctive relief. Appellant, on the same date, filed a Motion for Temporary Restraining Order that was granted on the same day.

{¶10} Appellee, on April 26, 2017, filed a Motion to Dismiss pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief could be granted and under the doctrine of forum non conveniens.   Appellant filed a memorandum in opposition to the same on May 10, 2017 and appellee filed a reply on May 17, 2017.

{¶11} The trial court, as memorialized in a Judgment Entry filed on August 18, 2017, granted the Motion to Dismiss for failure to state a claim and dismissed appellant's complaint with prejudice. The trial court found that enforcement of the Ohio forum selection clause in appellant's agreement would be unreasonable and unjust.

{¶12} Appellant now appeals from the trial court's August 18, 2017 Judgment Entry raising the following assignments of error on appeal:

{¶13} I. THE TRIAL COURT ERRED IN HOLDING THAT THE FORUM SELECTION CLAUSE IN THE PARTIES' CONTRACT WAS UNENFORCEABLE.

{¶14} II. THE TRIAL COURT ERRED IN HOLDING THAT THE CHOICE-OF-LAW PROVISION IN THE PARTIES' CONTRACT WAS UNENFORCEABLE.

**{¶15}** III. THE TRIAL COURT ERRED BY DISMISSING INVENTIV'S COMPLAINT WITH PREJUDICE DESPITE HOLDING ONLY THAT THE FORUM SELECTION CLAUSE IN THE PARTIES' CONTRACT WAS UNENFORCEABLE.

**{¶16}** Appellee has filed a cross-appeal raising the following assignments of error:

**{¶17}** I. THE TRIAL COURT ERRED IN HOLDING THAT INVENTIV'S CODE OF ETHICS AND BUSINESS CONDUCT AGREEMENT WAS NOT SUPERSEDED BY ADDISON WHITNEY'S EMPLOYEE CONFIDENTIALITY AND NON-COMPETE AGREEMENT.

**{¶18}** II. THE TRIAL COURT ERRED IN RELEASING INVENTIV'S BOND WITHOUT ALLOWING FOR A HEARING ON DAMAGES CAUSED BY A WRONGFULLY GRANTED TEMPORARY RESTRAINING ORDER.

I, II

**{¶19}** Appellant, in its first assignment of error, argues that the trial court erred in holding that the forum selection clause contained in the parties' agreement was unenforceable and in granting appellee's Motion to Dismiss. In its second assignment of error, appellant maintains that the trial court erred in holding that the choice of law provision in the parties' agreement was unenforceable.

**{¶20}** As an initial matter, we note that while appellee filed a Motion to Dismiss pursuant to Civ.R. 12(B)(6), dismissal for lack of personal jurisdiction comes within the purview of Civ.R. 12(B)(2). A trial court's determination of whether personal jurisdiction over a party exists is a question of law, and appellate courts review questions of law under a de novo standard of review. *Information Leasing Corp. v. Jaskot,* 151 Ohio App.3d 546, 2003-Ohio-566, 784 N.E.2d 1192 (1st Dist.). Moreover, we shall assume, arguendo, for

purposes of our analysis that the trial court did not err in holding that appellant's agreement with appellee was not superseded by the agreement that appellee signed with Addison Whitney, as alleged by appellee.

**{¶21}** Generally, a court must undertake a two-step process in determining whether a state court has personal jurisdiction over a non-resident defendant. *Fraley v. Estate of Oeding,* 138 Ohio St.3d 250, 2014-Ohio-452, 6 N.E.3d 9, ¶ 12. The court must first consider whether Ohio's long-arm statute, R.C. 2307.382, or the civil rules confer jurisdiction. *Id.* If they do, the court must then consider whether asserting jurisdiction over the non-resident defendant would deprive the defendant of the right to due process under the law, as guaranteed by the Fourteenth Amendment to the U.S. Constitution. *Id.* To satisfy due process, the defendant must maintain "certain minimum contacts with the state so that the suit does not offend traditional notions of fair play and substantial justice." *Clark v. Connor,* 82 Ohio St.3d 309, 314, 1998-Ohio-385, 695 N.E.2d 751.

**{¶22}** However, a person or entity may consent to personal jurisdiction, thereby waiving his her, or its due process rights. *Kennecorp Mrge. Brokers, Inc., v. Country Club Convalescent Hosp., Inc.,* 66 Ohio St.3d 173, 175–176, 610 N.E.2d 987 (1993). One way litigants may consent to personal jurisdiction of a particular court system is through a valid forum selection clause. *See Id.*

**{¶23}** In Ohio, it is well settled law that "[a]bsent evidence of fraud or overreaching, a forum selection clause contained in a commercial contract between business entities is valid and enforceable, unless it can be clearly shown that enforcement of the clause would be unreasonable and unjust." *Kennecorp Mrge. Brokers, Inc.,* syllabus. In the case sub judice, while appellant is a business entity, appellee, a former employee, is not. As noted

by the trial court, Ohio law regarding forum selection clauses in employment contracts is not as settled. See *IntraSee v. Ludwig*, 9th Dist. Lorain Nos. 10CA009916, 11CA010024, 2012-Ohio-2684.   In *Zilbert v. Proficio Mortgage, Ventures, L.L.C.*, 8th Dist. No. 100299, 2014-Ohio-1838 at paragraph 32, the court  stated that while it was "not advocating that a forum selection clause in an employment contract should never be enforced, or freely invalidated", it  found "that the type of contract can make a difference in determining whether to uphold such a clause."

**{¶24}**  Under Ohio law, a forum selection clause is presumptively valid, and will be enforced by the forum unless the party challenging the clause shows: (1) that the contract was the result of fraud or overreaching; (2) that enforcement would violate the strong public policy of the forum state; and (3) that enforcement under the particular circumstances of the case would result in litigation in a jurisdiction so unreasonable, difficult and inconvenient that the challenger would for all practical purposes be deprived of his day in court. *Barrett v. Picker Int'l, Inc.,* 68 Ohio App.3d 820, 824, 589 N.E .2d 1372 (8th Dist. 1990).

**{¶25}**  Appellee never argued, and the trial court never found, that the contract was the result of fraud. Rather, appellee asserts that the contract was the result of overreaching. "Overreaching is defined as the act or an instance of taking unfair commercial advantage of another." (Internal citations omitted.) *Buckeye Check Cashing of Arizona, Inc. v. Lang,* S.D.Ohio No. 2:06–CV–792, 2007 WL 641824, *5 (Feb. 23, 2007). "The unequal bargaining power of the parties or lack of ability to negotiate over the clause cannot, in itself, support a finding of overreaching." *Id.,* citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

"However, overreaching may be found if the disparity in bargaining power was used to take unfair advantage." *Id.,* citing *United Rentals, Inc. v. Pruett,* 296 F.Supp.2d 220, 227 (D.Conn.2003).

{¶26} The trial court, in the case sub judice, found that appellant had engaged in overreaching. When appellee was initially hired in April of 2010, she was hired as an administrative assistant and was not, as noted by the trial court, in a position of equal bargaining power with either appellant or Addison Whitney, both commercial entities. The inVentiv Agreement and the Addison Whitney Agreement both prohibited appellee from the same conduct. Under both agreements, appellee was prohibited from using or disclosing either appellant's or Addison Whitney's confidential information and from soliciting or providing specified services to any of appellant's or Addison Whitney's clients. While Addison Whitney has filed suit against appellee in North Carolina, appellant shortly thereafter filed suit against her in Ohio under the forum selection clause for the same alleged conduct said to have breached separate agreements, forcing her to retain counsel and defend herself in two different jurisdictions. We concur with the trial court that appellant thus has been able to take unfair advantage of appellee. This factor weighs in favor of nonenforcement.

{¶27} The next issue for determination is whether or not enforcement of the forum selection clause would violate the strong public policy of the forum state. The inVentiv Agreement signed by appellee contains a forum selection clause providing that it would be governed and construed in accordance with laws of the state of Ohio and that Ohio had exclusive jurisdiction. Thus, Ohio is the forum state. "Ohio recognizes the validity of forum selection clauses, and enforcement of the clause would not violate the public policy

of Ohio. Thus, this factor does not weigh in favor of nonenforcement." *Zilbert* at paragraph 24.

**{¶28}** The trial court, with respect to the third part of the test set forth in the *Barrett* case, found that enforcement of the forum selection clause in the inVentiv Agreement would be unreasonable and unjust. Appellee has the burden of establishing that it would be unreasonable or unjust to enforce the forum selection clause. *Zilbert,* supra.at paragraph 25. A finding of unreasonableness or injustice must be based on more than inconvenience to the party seeking to avoid the forum selection clauses' requirements. *Id.* Thus, "mere distance, mere expense, or mere hardship to an individual litigant is insufficient to invalidate a forum selection clause". *Salehpour v. Just A Buck Licensing, Inc.,* 12th Dist. Warren No. CA2013–03–028, 2013–Ohio–4436, citing *IntraSee, Inc. v. Ludwig,* 9th Dist. Lorain Nos. 10CA009916 and 11CA010024, 2012–Ohio–2684, ¶ 20. Rather, the trial court must find that enforcement of the clause would be manifestly and gravely inconvenient to the party seeking to avoid enforcement such that it will effectively be deprived of a meaningful day in court. *Info. Leasing Corp. v. Jaskot,* 151 Ohio App.3d 546, 552, 2003–Ohio–566, 784 N.E.2d 1192 (1st Dist.).

**{¶29}** In determining whether the selected forum is sufficiently unreasonable, Ohio courts consider the following factors: (1) which law controls the contractual dispute; (2) the residency of the parties; (3) where the contract was executed; (4) where the witnesses and parties to the litigation are located; and (5) whether the forum clause's designated location is inconvenient to the parties. *Original Pizza Pan v. CWC Sports Group, Inc.,* 194 Ohio App.3d 50, 2011–Ohio–1684, 954 N.E.2d 1220 (8th Dist.), citing *Barrett*, supra at 85.

**{¶30}** The inVentiv Agreement contains a choice of law provision that provides that the agreement would be governed and construed in accordance with Ohio law. In determining whether a choice-of-law provision is enforceable, the following standard applies:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state <u>and</u> such state would be the state of the applicable law in the absence of a choice by the parties. (Emphasis added).

**{¶31}** *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 453 N.E.2d 683, syllabus (1983).

**{¶32}** Appellant, which is incorporated in Ohio and has its principal place of business in Ohio, clearly has a substantial relationship to Ohio. Thus, we must determine whether application of the law of Ohio would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties.

**{¶33}** We find that North Carolina has a significant interest in the issues in this case. Appellee is a resident of North Carolina, she signed the inVentiv Agreement in North Carolina, and her alleged breach of the agreement occurred in North Carolina.

{¶34} Assuming, arguendo, that North Carolina has a "greater material interest" in the issue than Ohio, we must determine whether or not application of Ohio law would be contrary to the fundamental policy of North Carolina. We concur with appellant that we must look to the substantive law of Ohio and the substantive law of North Carolina with respect to the validity of confidentiality and noncompetition agreements. See, for example, *Century Business Servs. v. Barton,* 197 Ohio App.3d 352, 2011–Ohio–5917, 967 N.E.2d 782 (8th Dist.). "[I]n North Carolina, restrictive covenants between an employer and employee are valid and enforceable if they are (1) in writing; (2) made part of a contract of employment; (3) based on valuable consideration; (4) reasonable both as to time and territory; and (5) not against public policy." *United Laboratories, Inc. v. Kuykendall,* 322 N.C. 643, 649–50, 370 S.E.2d 375, 380 (1988). Under Ohio law, restrictive covenants not to compete are reasonable if the restriction or restraint imposed is (1) no greater than that necessary for the protection of the employer, (2) does not place an undue hardship on the employee, and (3) is not injurious to the public. *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 325 N.E.2d 544, paragraphs one and two of the syllabus (1975). We find that application of the substantive law of Ohio would not violate the fundamental public policy of North Carolina and that the choice of law provision should not be disregarded.

{¶35} With respect to the other factors*,* we note that while appellee resides in North Carolina, appellant is incorporated in Ohio and has its principal place of business there. The contract was executed by appellee in North Carolina and many of the witnesses are located there. The five other defendants in the North Carolina case, who would be relevant witnesses in the case sub judice, all reside in North Carolina. The final

factor set forth in *Barrett* requires this Court to determine whether or not Ohio is inconvenient to the parties. We agree with the trial court that this factor weighs heavily in favor of appellee under the unique facts of this case. In the case sub judice, appellee, who was at the time an administrative assistant, signed an agreement with appellant and also one with Addison Whitney. Both prohibited appellee from disclosing either's confidential information and prohibited appellee from soliciting clients of either. As stated by the trial court in finding that enforcement of appellant's forum selection clause would be inconvenient to the parties:

> Rodden [appellee] had no way to know whether she would be forced to defend an alleged breach in Ohio or North Carolina or whether Ohio or North Carolina law would apply. By simultaneously suing Rodden in both Ohio and North Carolina for the same alleged conduct, Rodden has been forced to retain separate counsel and conduct separate discovery in each jurisdiction. Additionally, all of Rodden's alleged acts occurred in North Carolina, and most if not all of the potential witnesses reside in North Carolina. My concerns are compounded by the fact that Rodden – hired initially as an at-will administrative assistant – held little bargaining power over the inVentiv Agreement's forum-selection clause.

**{¶36}** Based on the foregoing, we find that the trial court did not err in holding the forum selection and choice of law clauses to be unenforceable.

**{¶37}** Appellant's first and second assignments of error are, therefore, overruled.

III

**{¶38}** Appellant, in its third assignment of error, contends that the trial court erred in dismissing its complaint with prejudice.

**{¶39}** The trial court, in its August 18, 2017 Judgment Entry, found that the forum selection clause was unenforceable and that, therefore, there was no personal jurisdiction over appellee. The trial court dismissed the complaint with prejudice.

**{¶40}** Civ.R. 41(B)(4) clearly states that a dismissal for lack of jurisdiction is a "failure otherwise than on the merits." "A successful motion [to dismiss for lack of personal jurisdiction] will normally result in an order dismissing the action, but should not prejudice the plaintiff's action on the merits ….". *Jurko v. Jobs Europe Agency*, 43 Ohio App.2d 79, 88, 334 N.E.2d 478 (8th Dist. 1975).

**{¶41}** We find that the trial court erred in dismissing the complaint with prejudice.

**{¶42}** Appellant's third assignment of error is, therefore, sustained.

CROSS-APPEAL

I

**{¶43}** Appellee, in her first assignment of error in her cross-appeal, argues that the trial court erred in holding that appellant's Code of Ethics and Business Conduct Agreement was not superseded by Addison Whitney's Employee Confidentiality and Non-Compete Agreement.

**{¶44}** Based on our disposition of appellant's first and second assignments of error, appellee's first assignment of error is moot.

II

**{¶45}** Appellee, in her second assignment of error, argues that the trial court erred in releasing appellant's bond without allowing a hearing on damages caused by a wrongfully granted temporary restraining order.

**{¶46}** On April 14, 2017, appellant filed a Motion for Temporary Restraining Order and Preliminary Injunction. On the same date, the trial court issued a Temporary Restraining Order pending oral argument on the preliminary injunction. The trial court ordered that appellant post a bond in the amount of $20,000.00. The bond was posted on April 17, 2017.   The hearing on the preliminary injunction was postponed until after the trial court ruled on appellee's Motion to Dismiss. Because the trial court, pursuant to a Judgment Entry filed on August 18, 2017, granted the Motion to Dismiss, the hearing was never held. The trial court, in its August 18, 2017 Judgment Entry, vacated the April 14, 2017 Judgment Entry and stated that appellant could withdraw its $20,000.00 bond.

**{¶47}** In the case sub judice, there is no indication in the record that the bond has been released or that appellee has requested a hearing to recover damages on the bond placed with the court. We concur with appellant that, therefore, such issue is not ripe. It is well established that an appellate court will not rule on questions not considered by a trial court. *Ochsmann v. Great Am. Ins. Co.,* Franklin App. No. 02AP-1265, 2003-Ohio-4679 at paragraph 21,  citing *Mills-Jennings, Inc. v. Dept. of Liquor Control*, 70 Ohio St.2d 95, 99, 435 N.E.2d 407 (1982). Thus, we decline to address this argument for the first time on appeal.

**{¶48}** Appellee's second assignment of error is, therefore, overruled.

**{¶49}**  Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded to the trial court for the limited purpose of entering a dismissal without prejudice.

By: Baldwin, J.

John Wise, P.J. and

Delaney, J. concur.