[Cite as *N. Park Retirement Community Ctr., Inc. v. Sovran Cos., Ltd.* , 2011-Ohio-5179.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96376**

## NORTH PARK RETIREMENT COMMUNITY CENTER, INC., ET AL.

PLAINTIFFS-APPELLANTS

vs.

## SOVRAN COMPANIES LTD., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-736025

**BEFORE:** Stewart, P.J., Cooney, J., and Rocco, J.

**RELEASED AND JOURNALIZED:**    October 6, 2011

**ATTORNEYS FOR APPELLANTS**

Timothy N. Toma
Shannon M. McCormick
Toma & Associates, L.P.A., Inc.
33977 Chardon Road, Suite 100
Willoughby Hills, OH    44094


**ATTORNEYS FOR APPELLEES**

John J. McHugh
Brian C. Kalas
Sarah A. Miller
McHugh & McCarthy, Ltd.
5580 Monroe Street
Sylvania, OH 43560


MELODY J. STEWART, P.J.:

{¶ 1}   Plaintiffs-appellants, North Park Retirement Community Center, Inc., J&R Health Associates, Inc., and John and Kimberly Coury (we shall refer to them collectively as "North Park" unless otherwise noted), appeal from an order that stayed proceedings and referred to arbitration a breach of contract complaint against defendants-appellees, Sovran Companies, Ltd. and William Sheehan.   North Park argues that the court erred by finding its dispute with Sovran to be arbitrable because the dispute between the parties was unrelated to a prior agreement that contained an arbitration clause.

I

**{¶ 2}** As a preliminary matter, the parties both note that this court has issued conflicting opinions on the standard of review we employ when reviewing cases to determine whether the parties have agreed to arbitrate a dispute. In one line of cases, we have employed the de novo standard of review; while in another line of cases, we have employed the abuse of discretion standard of review. Compare *Shumaker v. Saks Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393 (de novo review) with *Sikes v. Ganley Pontiac Honda* (Sept. 13, 2001), 8th Dist. No. 79015 (abuse of discretion review). Rather than resolve this conflict, panels of this court have decided to review the issue under both standards. See, e.g., *GB AZ 1, L.L.C. v. Arizona Motors, L.L.C.,* 8th Dist. No. 95502, 2011-Ohio-1808, ¶8; *Bentley v. Cleveland Browns Football Co., L.L.C.*, 8th Dist. No. 95921, 2011-Ohio-3390, ¶13. This is an unacceptable course of action given that an appellate court is charged with stating the applicable law.

**{¶ 3}** These cases do not conflict in the sense that they disagree on the correct standard of review; rather they involve different issues and therefore use different standards of review. For example, in *Sikes*, the issue was whether the court erred by staying the matter pending arbitration, so the panel applied the abuse of discretion standard to determine whether the stay was properly granted. Other cases raise issues in the context of the referral to arbitration, which is in essence a review of the contract to determine whether the dispute is contractually covered by an agreement to arbitrate, thus requiring the de novo standard of review applied to contract construction. See, e.g., *Vanyo v. Clear Channel Worldwide*, 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d

482, ¶8. ("The issue of whether a controversy is arbitrable under the provisions of a written contract is a question of law for the trial court to decide.")

{¶ 4} The core issue in any dispute regarding the arbitrability of a matter is whether the parties agreed to arbitration. Arbitration is a creature of contract, see *United Steelworkers v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409, so we are guided by "the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration[.]" *First Options of Chicago, Inc. v. Kaplan* (1995), 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985. This requires an examination of the agreement to arbitrate, which has always been considered a review as a "matter of law;" in other words, a de novo review. See *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. If a court determines that the parties have agreed to arbitrate a dispute, it *must* refer the matter to arbitration. See R.C. 2711.03(A) ("upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement").

{¶ 5} Once a court determines that the parties have agreed to arbitrate a dispute and has ordered the parties to proceed to arbitration, staying the action pending the outcome of arbitration is required. While courts typically have discretion to grant or deny general requests for stays, see *State ex rel. Verhovec v. Mascio* (1998), 81 Ohio St.3d 334, 336, 691 N.E.2d 282, R.C. 2711.02(B) removes this discretion in arbitration

cases. That section states that the court, "upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, *shall* on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration." (Emphasis added.) The use of the word "shall" means that the court has no discretion and must comply with the statute. See *State ex rel. Law Office Pub. Defender v. Rosencrans*, 111 Ohio St.3d 338, 2006-Ohio-5793, 856 N.E.2d 250, ¶31 (the word "shall" establishes a mandatory duty while the word "should" requires the use of discretion and judgment).

{¶ 6} R.C. 2711.02(A) is consistent with the Federal Arbitration Act, Section 3, Title 9, U.S.Code, which likewise states that the federal courts have no discretion to deny a stay if the issues raised are within the agreement to arbitrate. See *Hornbeck Offshore Corp. v. Coastal Carriers Corp.* (C.A.5, 1993), 981 F.2d 752, 754; *United States v. Bankers Ins. Co.* (C.A.4, 2001), 245 F.3d 315, 319.

{¶ 7} That the court has no discretion to refuse to stay a matter that it has determined is subject to arbitration is logical. Arbitration is ultimately a private agreement to avoid the courts — so if the parties have agreed to arbitrate a dispute, the court's refusal to stay proceedings would in essence force the parties to submit to court proceedings to which they had agreed to avoid. It follows that appellate courts must review questions of arbitrability under the de novo standard of review applied to contracts. The abuse of discretion standard of review has no application in the context of

the court deciding to stay proceedings pending the outcome of arbitration because a stay in such circumstances is mandatory, not discretionary.

II

{¶ 8}  The substantive issue raised by North Park is whether the court erred by finding that it and Sovran agreed to arbitrate the present dispute.

A

{¶ 9}  North Park operates a retirement and assisted living facility.  In 2007, it sought to refinance its debt obligation with National City Bank, so it entered into a consulting agreement with Sovran, through Sovran's principal Sheehan, in which Sovran would obtain the necessary financing in exchange for a fee.  The consulting agreement contained an arbitration clause that stated:

{¶ 10}  "Any controversy arising out of this agreement, or out of the refusal by either party hereto to perform the whole or any part of this agreement that cannot be settled through negotiation, shall be settled by final and binding arbitration in accordance with the provisions of Chapter 2711 of the Ohio Revised Code."

{¶ 11}  In 2009, Sovran notified North Park that it had secured funding in the form of a "sale/leaseback" in the amount of $4 million.  It forwarded to North Park a letter agreement stating the terms of the funding, identified the assets being purchased, the terms of the lease, and other matters not related to this dispute.  North Park paid Sovran a $40,000 underwriting fee for its work.  North Park alleged that Sovran never obtained

the funding and then refused to return the underwriting fee, prompting North Park to file this breach of contract action.

B

{¶ 12} North Park first argues that the current dispute between the parties was governed by the 2009 letter agreement detailing funding, not the 2007 consulting agreement.

{¶ 13} In *AT&T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648, the Supreme Court described four basic principles that courts should use to determine whether a disputed issue is subject to arbitration: (1) arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute that he has not agreed to submit; (2) the question of arbitrability is an issue for judicial determination; (3) in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims and must submit the matter if it arguably appears to be encompassed by the language in the written instrument, even if the claim itself appears frivolous; and (4) there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Id., 475 U.S. at 648-650, 106 S.Ct. 1415 (internal quotations and citations omitted).

**{¶ 14}** North Park's complaint alleges that Sovran "failed to obtain the $4,000,000.00 for financing as required by the agreement, therefore failing to fulfill the requirements of the sale/leaseback agreement." While this breach of contract action is grounded on a violation of the 2009 letter agreement for financing, it is plain that North Park's claim also implicates the 2007 consulting agreement that required Sovran to "arrang[e] appropriate financing." North Park's claim certainly invokes the arbitration clause of the 2007 consulting agreement that encompasses "any controversy" arising out of Sovran's failure to perform "the whole or any part" of the agreement to arrange financing. This is so because Sovran's obligation to North Park was to arrange financing in accordance with the 2007 consulting agreement. It can be argued that the 2009 letter agreement was the fruit of the 2007 consulting agreement and that Sovran was at all events bound by its obligation to provide financing. At the very least, the two agreements were sufficiently related to each other to fall within the very wide ambit of the arbitration provision. Because we cannot say with positive assurance that Sovran's failure to obtain financing is not encompassed within the arbitration clause of the 2007 consulting agreement, we find that the court did not err by referring the matter to arbitration.

**{¶ 15}** For the same reasons, we reject North Park's argument that the court's decision to refer the matter to arbitration compels it to arbitrate that which it did not agree to arbitrate because the 2009 letter agreement did not contain an arbitration clause. The claim that Sovran breached the 2009 letter agreement by failing to provide financing

bears a sufficient nexus to its obligation to obtain financing in accordance with the terms of the 2007 consulting agreement.

C

{¶ 16} North Park next claims that it is not bound by the arbitration agreement in the 2007 consulting agreement because that contract was signed by different parties from those who signed the 2009 letter agreement. The 2007 consulting agreement was signed by John P. Coury on behalf of Sovereign Health and North Park Retirement Community Center, Inc., and also signed by John Coury individually. The 2009 letter agreement was signed by John Coury individually and by Kimberly Coury in her individual capacity and on behalf of J&R Healthcare Associates, Sovereign Healthcare Services, and North Park Care Center. North Park argues that John Coury was the only signatory of the 2009 letter agreement to sign the 2007 consulting agreement, so neither Kimberly Coury nor J&R Healthcare were bound by it.

{¶ 17} Because agreements to arbitrate are matters of contract, a person who was not a party to an arbitration agreement cannot be forced to arbitrate. *Cleveland-Akron-Canton Advertising Coop. v. Physician's Weight Loss Ctrs. of Am., Inc.*, 184 Ohio App.3d 805, 2009-Ohio-5699, 922 N.E.2d 1012, ¶14. Nonetheless, in some circumstances non-signatories to contracts can be contractually bound by ordinary contract and agency principles. *Short v. Resource Title Agency, Inc.*, 8th Dist. No. 95839, 2011-Ohio-1577, at ¶14.

{¶ 18} The 2007 consulting agreement was signed by John Coury as a representative of North Park and Sovereign Healthcare. The arbitration provision of that agreement made it binding on "the heirs, executors, administrators, legal representatives, successors, and assigns of the respective parties." Kimberly Coury signed the 2009 letter agreement both individually and on behalf of North Park Care Center, Sovereign Healthcare Services, and J&R Healthcare. The amended complaint states that J&R Health Associates, Inc.[1] does business as "Sovereign Healthcare." By signing in her corporate capacity, Kimberly Coury is a "representative" of those companies as contemplated by the arbitration provision of the 2007 consulting agreement.

{¶ 19} Moreover, an affidavit submitted by Sheehan states that Sovran "was introduced to Sovereign Healthcare as the 'family entity for several retirement communities in Northeast Ohio operated by the John Coury, Jr. family.'" Sovereign is the registered trade name of J&R Healthcare as alleged in the amended complaint. This fact is supported by evidence showing that Kimberly Coury filed the application for the Sovereign trade name with the secretary of state on a form that listed her as J&R Healthcare's "authorized representative." We thus find the record gives every indication that these companies and individuals are so affiliated and otherwise intertwined that the

---

[1] For reasons that are unexplained, the amended complaint is styled "J&R Health Associates, Inc.," the 2009 letter agreement refers to "J and R Health Associates, Inc." and is signed by Kimberly Coury on behalf of "J&R Healthcare Associates, Inc." Appellant's brief refers to "J&R Healthcare Associates." Neither party claims that there is a material difference among the names, so we refer to the entity as "J&R Healthcare" as expressed in the briefs.

court did not err as a matter of law by making J&R Healthcare and Kimberly Coury parties to the arbitration.

## III

{¶ 20} North Park next claims that the court erred by referring the matter to arbitration when Sovran only sought to stay the proceedings. We summarily reject this argument. While it is true that Sovran filed a "motion to stay," that motion not only sought a stay, but asked the court "to refer any such disputes to final and binding arbitration in accordance with the provisions of Chapter 2711 of the Ohio Revised Code." This sufficiently requested that the action not only be stayed, but that the court refer it to arbitration.

## IV

{¶ 21} Finally, North Park argues that the court erred by referring the matter to arbitration without first conducting an evidentiary hearing.

{¶ 22} R.C. 2711.03(B) states that upon receiving a request to refer a matter to arbitration, the court "shall hear" the parties and refer the matter upon being satisfied the making of the agreement to arbitrate or the failure to comply with arbitration is in issue. We have held that the R.C. 2711.03(B) mandate for a hearing does not necessarily require a full evidentiary hearing on the issues if the issues are sufficiently briefed for presentation to the court. See *Panzica Constr. Co. v. Zaremba, Inc*., 8th Dist. No. 95103, 2011-Ohio-620, ¶37.

{¶ 23} The court granted North Park's request for a hearing and scheduled a date for that hearing, but the record does not indicate that a hearing went forward as scheduled. Sovran maintains that the parties met with the court on the day scheduled for a hearing and "engaged in a meaningful confrontation" with the court that lasted for several hours, with each side given an opportunity to present their respective positions of the issues. North Park does not dispute Sovran's claim that the parties met with the court, but continues to insist that it was entitled to a full evidentiary hearing.

{¶ 24} Regardless of whether the parties met with the court, we find that the issues were sufficiently fleshed out by the parties' submissions to the court that the matter could be heard on briefs without the need of a full evidentiary hearing. North Park makes no argument that it had evidence to present to the court that it could not present in briefing, nor does it maintain that it wished to raise new arguments in addition to those previously presented to the court. Of course, if the parties did meet with the court, albeit informally in chambers as suggested by Sovran, that fact reinforces our conclusion that North Park was given a full and fair opportunity to present its case for denying Sovran's motion to refer the matter to arbitration. With no error remotely manifest, we find that the court did not err by failing to hold a full evidentiary hearing on the motion to refer the case to arbitration.

Judgment affirmed.

It is ordered that appellees recover of appellants their costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, PRESIDING JUDGE

KENNETH A. ROCCO, J., CONCURS;

COLLEEN CONWAY COONEY, J., CONCURS
IN JUDGMENT ONLY