[Cite as *Rivera v. Rent A Center, Inc.*, 2015-Ohio-3765.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101959**

# GILBERTO RIVERA, JR.

PLAINTIFF-APPELLEE

vs.

# RENT A CENTER, INC., ET AL.

DEFENDANTS-APPELLANTS

## JUDGMENT:
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-829599

**BEFORE:** Keough, P.J., Stewart, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** September 17, 2015

**ATTORNEYS FOR APPELLANTS**

Edward H. Chyun
Littler, Mendelson, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, Ohio 441114

Eduardo F. Cuaderes
Robert F. Friedman
2001 Ross Avenue
Suite 1500
Lock Box 116
Dallas, Texas 75201

Andrew Trusevich
5501 Headquarters Drive
Plano, Texas 75024

**ATTORNEYS FOR APPELLEE**

Bradley Levine
Stephan I. Voudris
Voudris Law, L.L.C.
8401 Chagrin Road, Suite 8
Chagrin Falls, Ohio 44023

KATHLEEN ANN KEOUGH, P.J.:

{¶1} Defendant-appellant, Jeffrey Owens ("Owens"), appeals the trial court's decision denying his motion to dismiss or to stay proceedings pending arbitration. For the reasons that follow, we reverse and remand.

{¶2} In July 2014, plaintiff-appellee, Gilberto Rivera, Jr. ("Rivera"), filed his initial complaint against Rent A Center, Inc. ("RAC") and Owens, Rivera's supervisor, for race discrimination arising out of the termination of his employment with RAC. Rivera subsequently filed an amended complaint in July 2014, only naming Owens as a defendant alleging claims of race discrimination and aiding and abetting. His complaint alleges that Owens, serving as Rivera's supervisor, "acted directly or indirectly in the interest of RAC." Complt. ¶ 10. It further alleged that Owens and RAC terminated Rivera, and that Owens and RAC were employers of Rivera. Rivera alleges in the complaint that Owens made it his goal to fire Rivera and hire an African-American, manipulated the RAC Regional Director to fire Rivera, and that Owens acted with malice.

{¶3} Owens filed a motion to dismiss or stay proceedings pending arbitration. Attached to the motion was a copy of the "Mutual Agreement to Arbitrate Claims" ("Agreement") signed by Rivera with RAC in 2010. Rivera opposed the motion contending that the Agreement was not applicable because Owens did not sign the Agreement; thus, the agreement to arbitrate was only between RAC and Rivera.

{¶4} The trial court summarily denied Owens's motion, and set the matter for a

pretrial. It is from this decision that Owens appeals, pursuant to R.C. 2711.02(C) (order denying stay of trial pending arbitration is a final appealable order). Owens raises as his sole assignment of error that the trial court erred in denying his motion to dismiss or stay proceedings and failed to order Rivera to arbitrate his claims.

{¶5} Within this assignment of error, Owens raises two separate issues. First, Owens contends that the trial court lacked authority to even determine the issue of whether or not the claims asserted by Rivera were subject to arbitration because the Agreement required that questions concerning its formation and applicability were to be determined by the arbitrator and not by the court.

{¶6} Under the "delegation clause," the Agreement provides that

The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.

{¶7} However, Rivera contends that the delegation clause did not apply to Owens because there is no agreement to arbitrate between Owens and him, and therefore, the trial court, and not the arbitrator must decide whether arbitration should ensue in this case.

{¶8} The second issue Owens raises pertains to the trial court's ultimate decision denying his request to dismiss or stay the action pending arbitration. Owens contends that he can enforce the Agreement pursuant to its terms and also under the theory and

principles of agency and as a third-party beneficiary to the Agreement. Again, Rivera contends that the Agreement was only between RAC and him, not Owens and him; he did not agree to arbitrate any claims with Owens.

**{¶9}** In deciding both of these issues, it must be determined whether the Agreement applies to Owens. We recognize that this resolution may interfere with the arbitrator's duties under the delegation clause, however, this case presents the proverbial "chicken or the egg" conundrum — the delegation clause is only applicable and enforceable if the parties agreed to arbitrate; but whether the parties agreed to arbitrate is a decision determined by the arbitrator under the delegation clause.[1]

**{¶10}** In addressing this question of law regarding arbitrability, we apply a de novo standard of review. *N. Park Retirement Community, Ctr., Inc. v. Sovran Cos.*, 8th Dist. Cuyahoga No. 96376, 2011-Ohio-5179, ¶ 7. Furthermore, a de novo standard applies to questions of whether a party has agreed to submit an issue to arbitration. *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7, citing *Shumaker v. Saks, Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393 (8th Dist.), citing *Vanyo v. Clear Channel Worldwide*, 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482 (8th Dist.).

---

[1] In *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 130 S.Ct. 2772, 177 L.Ed.2d 403, (2010), the United States Supreme Court reviewed the identical arbitration delegation clause as presented in this case. The court held that under the Federal Arbitration Act, where an agreement to arbitrate includes an agreement that the arbitrator will determine the enforceability of the agreement, if a party challenges specifically the enforceability of that particular agreement, the trial court considers the challenge, but if a party challenges the enforceability of the agreement as a whole, the challenge is for the arbitrator. *Id.* at 66-76. Here, Rivera challenges both.

**{¶11}** Ohio courts recognize a presumption favoring arbitration when the issue of the parties' dispute falls within the scope of the arbitration provision. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 27. In light of this strong presumption favoring arbitration, all doubts should be resolved in its favor. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15.

**{¶12}** Arbitration is favored because it provides the parties with a relatively expeditious and economical means of resolving a dispute. *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 712, 590 N.E.2d 1242 (1992). Thus, if a dispute even arguably falls within the parties' arbitration provision, the trial court must stay the proceedings until arbitration has been completed. *Fields v. Herrnstein Chrysler*, *Inc.*, 4th Dist. Pike No. 12CA827, 2013-Ohio-693, ¶ 15, citing *Tomovich v. USA Waterproofing & Found. Servs., Inc.*, 9th Dist. Lorain No. 07CA009150, 2007-Ohio-6214, ¶ 8.

**{¶13}** Ohio's strong public policy favoring arbitration is codified in Chapter 2711 of the Revised Code. *Westerfield v. Three Rivers Nursing & Rehab. Ctr., L.L.C.*, 2d Dist. Montgomery No. 25347, 2013-Ohio-512, ¶ 17. Under R.C. 2711.02(B) on application of one of the parties, a trial court may stay litigation in favor of arbitration pursuant to a written arbitration agreement. *Taylor Bldg.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 28. R.C. 2711.02(B) provides:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement,

provided the applicant for the stay is not in default in proceeding with arbitration.

{¶14} In this case, there is no dispute over whether an Agreement exists. Additionally, there is no dispute over what types of claims are covered by the Agreement. Pursuant to the Agreement, "[t]he claims covered by this Agreement include, but are not limited to, * * * tort or statutory claims for discrimination (including but not limited to race, * * *.)" Therefore, Rivera's claim for race discrimination would be covered under the Agreement.

{¶15} However, the dispute arises as to who is subject to the Agreement. The fourth paragraph of the agreement, under the heading "CLAIMS COVERED BY THE AGREEMENT," reads,

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, including without limitation, claims arising out of or related to my application for employment, assignment/employment, and/or the termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary, and affiliated entities, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and/or (5) all successors and assigns of any of them.

Rivera contends that pursuant to the language in this paragraph, the Agreement only governs actions between the "Company" and him. Under the first and second paragraphs of the Agreement, the "company" is defined as RAC and

> also to all parent, subsidiary, partners, divisions, and affiliated entities, and/or any companies that are acquired by the Company or its subsidiaries, parents, partners, divisions, or affiliates, and all benefit plans, the benefit plans' sponsors, fiduciaries, administrators, affiliates, and all successors and

assigns of any of them.

Therefore, Rivera maintains that because this paragraph does not include "employees," the Agreement is only between Rivera and RAC and does not include an agreement to arbitrate with Owens.

{¶16} Owens counters by also focusing on the fourth paragraph of the Agreement, whereby Rivera agreed to arbitrate

> all claims or controversies ("claims"), past, present or future, including without limitation, claims arising out of or related to my application for employment, *assignment/employment, and/or the termination of my assignment/employment* that the Company may have against me *or that I may have against any of the following*: (1) the Company, (2) its officers, directors, *employees*, or agents *in their capacity as such or otherwise*, (3) the Company's parent, subsidiary, and affiliated entities, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and/or (5) all successors and assigns of any of them.

(Emphasis added.)  Therefore, Owens maintains that because Rivera has a claim or controversy against him, an employee of RAC, arising out of his employment and termination of his employment with RAC, Owens can enforce the Agreement.

{¶17} The parties do not dispute that Owens did not sign the Agreement. Therefore, the question turns to whether Owens can enforce the Agreement under agency or third-party beneficiary principles.

{¶18} Arguing against enforcement, Rivera relies heavily on *Dantz v. Apple Am. Group*, *LLC*, 277 F.Supp.2d 794 (N.D. Ohio July 21, 2003).  In *Dantz*, plaintiff sued her employer and supervisor alleging various causes of action including sexual harassment and retaliation.  The court reviewed an arbitration provision, similar to the one in this case.  The arbitration agreement was signed by the plaintiff and her employer and

covered the claims raised by plaintiff in the lawsuit, including those claims that arise against the company's employees and agents. The district court, in interpreting Ohio law, concluded that her supervisor could be held individually liable for claims of sexual harassment and/or retaliatory behavior because those claims were brought under Ohio law.[2] *Id.* at 798. The court concluded, in dicta, that because plaintiff's supervisor was subject to individual liability, the claims against the supervisor "are not in any way subject to the arbitration agreement which allegedly exists between [plaintiff] and the Company" because the arbitration agreement was made between plaintiff and the Company, not between plaintiff and her supervisor. *Id*. at 798.

**{¶19}** However, we find that the *Dantz* court did not consider that Ohio law allows for nonsignatories to enforce an arbitration clause because that issue was not before the court.[3]

**{¶20}** Ohio courts have recognized that a nonsignatory agent may enforce an arbitration agreement between a plaintiff and the agent's principal when ordinary

---

[2]Unlike federal law, Ohio law allows for individual employees, supervisors, and managers to be personally liable for unlawful discriminatory acts committed by such persons in violation of R.C. Chapter 4112. In *Genaro v. Cent. Transport, Inc.*, 84 Ohio St.3d 293, 703 N.E.2d 782 (1999), the Ohio Supreme Court held that "for purposes of R.C. Chapter 4112, a supervisor/manager may be held jointly and/or severally liable with her/his employer for discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112." *Id*. at 300. Liability was expanded to individual employees, not otherwise deemed as an employer under the statute, in *Cheek v. Indus. Powder Coatings, Inc.*, 84 Ohio St.3d 534, 706 N.E.2d 323 (1999).

[3]This issue was not before the court because the supervisor was unrepresented by legal counsel and the claims against the supervisor were brought under Ohio law, thus outside federal jurisdiction.

principles of contract and agency law require. *See Cleveland-Akron-Canton Advertising Coop. v. Physician's Weight Loss Ctrs. of Am., Inc.*, 184 Ohio App.3d 805, 2009-Ohio-5699, 922 N.E.2d 1012 (8th Dist.); *Genaw v. Lieb*, 2d Dist. Montgomery No. 20593, 2005-Ohio-807.

{¶21} In *Genaw*, the plaintiff invested money with an investment firm pursuant to five separate agreements all of which contained arbitration clauses. *Id.* Plaintiff sued the employee of the firm who managed his accounts and signed one of the agreements on behalf of the firm. The employee filed a motion to dismiss and compel arbitration, arguing that the claims were subject to the mandatory arbitration agreements the plaintiff had signed. The trial court granted the motion to dismiss. The Second District affirmed, holding that a plaintiff cannot avoid an arbitration agreement by suing nonsignatory agents or signatory agents in their individual capacity in court. *Id.* ¶ 24. The court explained that to find otherwise would contradict the "strong" state and federal policies favoring arbitration. *Id.* The court specifically held "that under agency principles a non-signatory agent may enforce an arbitration agreement between a plaintiff and the agent's principal when, as in this case, the alleged misconduct arose out of the agency relationship." *Id.*

{¶22} Additionally, in *Manos v. Vizar*, 9th Dist. Medina No. 96 CA 2581-M, 1997 Ohio App. LEXIS 3036 (July 9, 1997), contracted with a home inspection company to inspect their new home. The contract contained an arbitration clause stating that "any dispute between the parties shall be settled by arbitration before the American Arbitration

Association." *Id*. at *1. The Manoses subsequently sued the company and the inspector for negligence. The court found that the language in the arbitration clause indicated the parties' intent "to provide a single arbitral forum to resolve all disputes arising as a result of the home inspection." *Id*. The court further held that traditional agency principles "bind a non-party agent to the terms of an arbitration agreement made by his principal if the agent's actions served as the basis for his potential liability." *Id*. at *2. The court concluded that a plaintiff cannot be permitted to avoid a contract to arbitrate a dispute by simply suing an individual nonsignatory agent separately from the contracting employer. *Id* at *1.

{¶23} Recently, this court addressed this issue of whether a nonsignatory to an arbitration agreement could enforce the agreement in *Dilbert v. Proficio Mtge. Ventures, L.L.C.*, 8th Dist. Cuyahoga No. 100299, 2014-Ohio-1838. Dilbert filed a wrongful termination complaint against his employer, Proficio, and two of its employees. Dilbert alleged various causes of action, including retaliatory discrimination, religious discrimination, and wrongful termination based on religious discrimination. Dilbert appealed the trial court's decision granting the employees' request to stay proceedings pending arbitration. He argued that neither employee was a party to the arbitration agreement, thus the court erred in staying his claims against them. This court upheld the trial court, holding that the broad language of the agreement encompasses disputes between signatories and nonsignatory employees acting in the course and scope of their employment with Proficio. *Id*. at ¶ 41. Further, this court concluded that the agreement

covered all claims arising out of the employment relationship, including disputes involving nonparties to the agreement. *Id*. at ¶ 42.

**{¶24}** In this case and much like the cases discussed above, pursuant to the terms of the Agreement, Rivera agreed to arbitrate all claims and controversies relating to his employment and termination with RAC, including claims for race discrimination. Rivera also agreed to arbitrate all matters pertaining to his employment and termination with the Company that he "may have against any * * * employees * * * in their capacity as such or otherwise." Owens is an employee of the Company and all allegations in the complaint arise out of his employment and agency relationship with RAC. Therefore, based on *Genaw*, *Manos,* and *Dilbert*, the Agreement is enforceable as between Rivera and Owens, even though Owens is a nonsignatory or nonparty.

**{¶25}** Insofar as Rivera is attempting to sue Owens in his individual capacity for discrimination pursuant to R.C. Chapter 4112, the terms of the Agreement provide that Rivera agreed to arbitrate all claims involving RAC's "employees * * * in their capacity as such or *otherwise*." (Emphasis added.) In keeping the principles of arbitration in mind, we construe that this "otherwise" classification would cover employees in their individual capacity.

**{¶26}** Accordingly, the trial court erred in denying Owens's motion to stay proceedings pending arbitration. The assignment of error is sustained.

**{¶27}** Judgment reversed and remanded for the trial court to stay all proceedings pending arbitration.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, PRESIDING JUDGE

MELODY J. STEWART, J., and
PATRICIA ANN BLACKMON, J., CONCUR