[Cite as *Miller v. Cardinal Care Mgt., Inc.*, 2019-Ohio-2826.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| MARK MILLER, ET AL., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 107730 |
| v. | : | |
| CARDINAL CARE MANAGEMENT, INC., ET AL. | : | |
| Defendants-Appellees. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 11, 2019

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-898372

### *Appearances:*

Djordjevic and Marmarous, L.L.C., Peter W. Marmaros and Michael M. Djordjevic; Bashein and Bashein Co., L.P.A., and W. Craig Bashein; Paul W. Flowers Co., L.P.A., Paul W. Flowers, and Louis E. Grube, *for appellees.*

Tucker Ellis, L.L.P., Kelli R. Novak, Ernest W. Auciello, and Susan Audey, *for appellants.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendants-appellants, Cardinal Care Management, Inc.; Cardinal Care Management; Foundations Health Solutions, Inc.; Saybrook Landing Health and Rehabilitation; Saybrook Meadows Retirement Center, Inc.; Saybrook

Meadows, Ltd.; Jefferson Healthcare Center, L.L.C.; Jefferson Healthcare Center; Bonnie Foderetti, STNA; Brian McNaughton, Catherine Higgins, STNA; Christy Vincenzo, LPN; Dawn King, LPN; Eric Woodin, Erin Harper, George Dubic, Jamie Burckhartte, LPN; Jessica Rich, RN; Joyce Bovee, STNA; Krystal Ramirez, LPN; Megan Green, RN; Molly McCluskey, LPN-MDS; Nancy Huston, RN; Peter Vilasi; Rochelle Perkio, RN; Sarah E. Smith, LPN; Shelley Styzej, LPN; and Susan Madsen (collectively the "Saybrook defendants"), appeal from the trial court's judgment denying their motion to stay proceedings and compel arbitration. For the reasons that follow, we affirm.

## I.   Background

{¶ 2}   On December 22, 2016, Lori Miller ("Miller" or "Lori Miller") became a resident of Saybrook Landing nursing home ("Saybrook Landing"). Eight days later, she was dead. On May 24, 2018, Miller's children — Mark Miller, individually and as administrator of Miller's estate, Kimberly Gonzalez, and Katrina Miller (collectively "plaintiffs-appellees") — brought suit against Saybrook Landing and the Saybrook defendants, as well as various University Hospitals entities and doctors associated with those entities, alleging that Miller died as a result of the defendants' substandard care. The complaint asserted claims for negligence, survivorship, statutory violations of the Nursing Home Residents' Bill of Rights, loss of consortium, reckless and conscious disregard of Miller's rights and safety, and wrongful death.

**{¶ 3}** Saybrook Landing and the Saybrook defendants answered the complaint. Among their affirmative defenses was an assertion that plaintiffs-appellees' claims were subject to an arbitration agreement, which they attached as an exhibit to their answer.

**{¶ 4}** Saybrook Landing and the Saybrook defendants subsequently filed a motion to stay proceedings and compel arbitration. In their motion, Saybrook Landing and the Saybrook defendants argued that upon her admission to Saybrook Landing on December 22, 2016, Lori Miller executed all admission paperwork. They asserted that among the paperwork was a three-page arbitration agreement providing that arbitration was to be used to resolve disputes. The agreement stated:

> INTRODUCTION
>
> This agreement sets forth a resolution procedure by which the Resident and Facility intend to resolve all disputes which may arise between them concerning any disagreement arising out of the *Nursing Facility Admission Agreement.*
>
> The procedure is intended to be a speedy and economic alternative to court litigation which is often slow, time-consuming and expensive. By using private arbitration without the right to appeal, the parties are able to avoid crowded court dockets and lengthy appeals processes.

**{¶ 5}** The arbitration agreement stated that any disagreement regarding nonpayment or overpayment of any fee "by the Resident, Resident's Representative, or the Facility may be adjudicated in a court of law, unless arbitration is mutually agreed upon by the parties." Regarding other disputes, the agreement stated:

> ALL OTHER DISPUTES
>
> Any controversy, dispute, disagreement or claim of any kind arising out of, or related to the *Nursing Facility Agreement* (other than the

payment of charges as described above) shall be settled by binding arbitration. These disputes include, but are not limited to, all claims based upon breach of contract (other than claims arising out of nonpayment of charges), negligence, medical malpractice, tort, breach of statutory duty, resident's rights, and any departures from accepted standards of care.

{¶ 6} The agreement further stated that Miller or her "personal representative" had the option of cancelling the agreement within 30 days of signing.

{¶ 7} Saybrook Landing and the Saybrook defendants attached a copy of the arbitration agreement to their motion.[1] The agreement was signed by Lori Miller as "resident" and Carissa Allen as "representative of facility." The agreement did not define "facility," other than to list "Saybrook Landing" as "name of facility." In addition, the agreement did not state that it applied to any corporate entities other than "the facility," nor that it applied to "the facility's" agents or employees. The agreement also did not state that the agreement to arbitrate disputes arising from the Nursing Facility Agreement applied to Lori Miller's heirs, beneficiaries, successors, and assigns.[2] Furthermore, the line for the signature of "representative of resident" was blank.

---

[1] The agreement was not verified by affidavit, and the bottom lines of the first and second pages were cut off and unreadable.

[2] As will be discussed later in this opinion, the agreement provided that if a dispute went to arbitration, *the arbitrator's decision* was binding on all parties to the arbitration, and their successors and assigns. The arbitration agreement did not, however, state that the agreement itself was binding on Miller's heirs, beneficiaries, successors, and assigns.

{¶ 8} In their motion, Saybrook Landing and the Saybrook defendants contended that both Ohio and federal public policy favor arbitration as a means of resolving disputes, and that arbitration agreements between nursing homes and their residents are valid and enforceable where the agreement is not a precondition to receiving care, such as the agreement signed by Lori Miller. They argued that the arbitration agreement signed by Miller included claims arising out of "negligence, medical malpractice, tort, breach of statutory duty, resident's rights, and any departures from accepted standards of care," and that plaintiffs-appellees' claims fell "squarely" within the scope of the arbitration agreement, requiring the trial court to enforce the agreement.

{¶ 9} Saybrook Landing and the Saybrook defendants argued further that in addition to arbitrating their other claims, the plaintiffs should be required to arbitrate their wrongful death claim. They contended that the decision of the Ohio Supreme Court in *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258, wherein the court held that a decedent cannot bind his or her beneficiaries to arbitrate their wrongful death claims, was a "categorical rule" against arbitrating wrongful death claims, in contravention of the Federal Arbitration Act (the "FAA"), and thus was preempted by the FAA.

{¶ 10} Notably, although the arbitration agreement specified that it was between the "resident" and "the facility," which was named in the agreement as "Saybrook Landing," and plaintiffs-appellees' complaint asserted claims against Saybrook defendants in addition to Saybrook Landing, Saybrook Landing and the

Saybrook defendants offered no argument in their motion regarding why the agreement would also apply to employees or agents of Saybrook Landing, or to corporate entities other than Saybrook Landing. Additionally, although the agreement stated that it applied to disputes "arising out of, or related to the *Nursing Facility Agreement*," and Saybrook Landing and the Saybrook defendants asserted in a footnote to their motion that Lori Miller signed the Nursing Facility Agreement when she was admitted, they did not provide a signed copy of the Nursing Facility Agreement with their motion. Nor did they argue that plaintiffs-appellees' claims arose out of the Nursing Facility Agreement. Finally, Saybrook Landing and the Saybrook defendants made no argument regarding why the arbitration agreement would apply to the plaintiffs-appellees individually even though (1) they had not signed the agreement, and (2) there was no provision in the agreement stating that it applied to Lori Miller's heirs, beneficiaries, successors, and assigns.

{¶ 11} After Saybrook Landing and the Sayrook defendants filed their motion to stay proceedings and compel arbitration, plaintiffs-appellees dismissed Saybrook Landing from the suit without prejudice. They then filed a brief in opposition to the Saybrook defendants' motion.

{¶ 12} In their brief in opposition, plaintiffs-appellees asserted that the trial court should deny the Saybrook defendants' motion because only signatories to an arbitration agreement can be forced to arbitrate their claims, and the arbitration agreement at issue was entered into between Lori Miller and an entity known as "Saybrook Landing." Plaintiffs-appellees noted that there was no language in the

agreement joining any corporate entities other than Saybrook Landing to its terms, and no language indicating that the agreement applied to employees, agents, or other individuals associated with the facility. Accordingly, plaintiffs-appellees argued that only Saybrook Landing had standing to enforce the agreement, and because they had dismissed Saybrook Landing from the suit, none of the other Saybrook defendants could enforce the agreement.

{¶ 13} Plaintiffs-appellees argued further that the trial court should deny the motion because the arbitration agreement was clearly limited to disputes arising out of or related to the Nursing Facilities Agreement. They contended that the complaint did not raise any such claims, and the trial court could not ignore the plain language of the agreement to enforce the agreement.

{¶ 14} Plaintiffs-appellees also argued that Lori Miller never got an opportunity to cancel the arbitration agreement because she died before the 30-day cancellation period set forth in the agreement had passed. Plaintiffs-appellees argued that the failure of this condition precedent rendered the remainder of the agreement invalid.

{¶ 15} Further, plaintiff-appellees' argued that they could not be forced to arbitrate their wrongful death and loss of consortium claims because the Ohio Supreme Court has held that individuals cannot release claims that are not yet in existence and that accrue in favor of other persons, because these claims accrue independently to beneficiaries for the injuries they suffered as a result of the

decedent's death.  Thus, plaintiffs-appellees argued, an individual cannot bind his or her beneficiaries to arbitrate their wrongful death and loss of consortium claims.

{¶ 16}  Finally, plaintiff-appellees argued that the arbitration agreement was unconscionable because it provided that arbitration was to occur before the American Health Lawyers Association, and plaintiffs-appellees would not receive an impartial hearing before a tribunal composed solely of "attorneys who earn their living defending hospitals, medical practitioners, and nursing homes."

{¶ 17}  The trial court subsequently denied the Saybrook defendants' motion, ruling that "[t]he defendants' motion to stay proceedings and compel arbitration, filed 7/30/2018, is denied for the reasons argued by the plaintiffs other than unconscionability.  The evidentiary record is too scant to decide whether the arbitration agreement is unconscionable."[3]

{¶ 18}  This appeal followed.

## II.  Law and Analysis

{¶ 19}  The Saybrook defendants' sole assignment of error on appeal is that the trial court erred by denying their motion to stay proceedings and compel

---

[3] The Saybrook defendants' assertion on appeal that the trial court ruled on their motion "without giving [them] an opportunity to reply" seems disingenuous.  In a journal entry dated July 19, 2018, the trial court noted that it held a case management conference at which "all counsel participated and agreed" that the defendants would file their motion to compel arbitration by August 1, 2018, and plaintiffs had until August 31, 2018, to file an opposition.  The court also set a subsequent status conference for September 10, 2018.  It is apparent from the trial court's journal entry that a reply brief was not contemplated by the parties or the trial court.  Furthermore, the Saybrook defendants could have filed a motion for reconsideration with a request for additional briefing in light of plaintiffs-appellees' dismissal of Saybrook Landing after they filed their motion to stay proceedings and compel arbitration.  They did not do so, however.

arbitration. They argue that the trial court erred because the arbitration agreement applies not only to Saybrook Landing as signatory, but also to its nonsignatory agents and employees, who can enforce the agreement. They argue further that the arbitration agreement applies to plaintiffs-appellees' wrongful death claim because that claim is preempted by the FAA.

{¶ 20} "The core issue in any dispute regarding the arbitrability of a matter is whether the parties agreed to arbitration." *N. Park Retirement Community Ctr., Inc. v. Sovran Cos.*, 8th Dist. Cuyahoga No. 96376, 2011-Ohio-5179, ¶ 4. Arbitration is contractual by nature, "so we are guided by 'the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration.'" *Id.*, quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Thus, while there are strong federal and state policies favoring arbitration agreements, *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 500, 692 N.E.2d 574 (1998), such agreements must not be so broadly construed as to encompass claims and parties that were not intended by the contract. *I Sports v. IMG Worldwide, Inc.*, 8th Dist. Cuyahoga No. 83349, 2004-Ohio-3113, ¶ 14, citing *Thomson-CSF, S.A. v. Am. Arbitration Assn.*, 64 F.3d 773, 776 (2d Cir.1995). "While arbitration is encouraged as a form of dispute resolution, the policy favoring arbitration does not trump the constitutional right to seek redress in court." *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258, ¶ 8.

{¶ 21} Where a party has not signed an arbitration agreement, there is a presumption against arbitration. *Fifth Third Bank v. Senvisky*, 8th Dist. Cuyahoga Nos. 100030 and 100571, 2014-Ohio-1233, ¶ 11, citing *Fifth Third Bank v. Rowlette*, 10th Dist. Franklin No. 13AP-337, 2013-Ohio-5777, ¶ 7, citing *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 21. Nevertheless, in some circumstances, nonsignatories to arbitration contracts may be contractually bound by ordinary contract and agency principles. *N. Park Retirement Community Ctr.* at ¶ 17, citing *Short v. Resource Title Agency, Inc.*, 8th Dist. Cuyahoga No. 95839, 2011-Ohio-1577, ¶ 14. We apply a de novo standard of review to determine whether a party has agreed to submit an issue to arbitration. *Rivera v. Rent A Ctr., Inc.*, 8th Dist. Cuyahoga No. 101959, 2015-Ohio-3765, ¶ 10.

### A. Mark Miller, Individually, Kimberly Gonzalez, and Katrina Miller did not sign the arbitration agreement and are not bound by its terms

{¶ 22} On appeal, the Saybrook defendants concede that none of the defendants other than Saybrook Landing signed the arbitration agreement. They further concede that plaintiffs-appellees dismissed Saybrook Landing from the suit, and accordingly, that the remaining Saybrook defendants are all nonsignatories to the arbitration agreement. They contend that they can enforce the arbitration agreement against plaintiffs-appellees, however, because they are all agents and employees of Saybrook Landing.

{¶ 23} The Saybrook defendants did not raise this argument in the trial court, however. It is well settled that a party cannot raise new arguments and legal

issues for the first time on appeal, and that failure to raise an issue before the trial court waives that issue for appellate purposes. *Cleveland Town Ctr., L.L.C. v. Fin. Exchange Co. of Ohio, Inc.*, 2017 Ohio-384, 83 N.E.3d 383, ¶ 28 (8th Dist.); *Kalish v. Trans World Airlines, Inc.*, 50 Ohio St.2d 73, 79, 362 N.E.2d 994 (1977) (appellate courts "will not consider a question not presented, considered, or decided by a lower court"). Thus, we will not consider this argument for the first time on appeal. *See, e.g., Senvisky*, 8th Dist. Cuyahoga Nos. 100030 and 100571, 2014-Ohio-1233 at ¶ 21, fn. 2 (court could not address new argument on appeal that arbitration agreement was enforceable because plaintiff was a third-party beneficiary of the arbitration agreement).

{¶ 24} Even if we were to consider the argument, we would find it has no merit. This court has recognized several theories under which nonsignatories may be bound to the arbitration agreements of others. These theories, which arise from common law principles of contract and agency law, are: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel. *I Sports,* 8th Dist. Cuyahoga No. 83349, 2004-Ohio-3113, at ¶ 12, citing *Thomson-CSF,* 64 F.3d at 776; *Cleveland-Akron-Canton Adver. Coop. v. Physician's Weight Loss Ctrs. of Am.*, 184 Ohio App.3d 805, 2009-Ohio-5699, 922 N.E.2d 1012, ¶ 14-17 (8th Dist.).

{¶ 25} The theories were explained in *I Sports* as follows: (1) a nonsignatory may compel arbitration against a party to an arbitration agreement under a theory of incorporation by reference where the party has entered into a separate contractual

relationship with the nonsignatory that incorporates the existing arbitration clause; (2) a nonsignatory may be bound by an arbitration agreement if the nonsignatory's conduct indicates that it assumed the obligation to arbitrate; (3) traditional principles of agency law may bind a nonsignatory to an arbitration agreement; (4) veil piercing and alter ego theories may be used to bind a nonsignatory corporation to an arbitration agreement signed by another corporation; and (5) a nonsignatory to an arbitration agreement may be estopped from denying an obligation to arbitrate where the nonsignatory has knowingly accepted the benefits of an agreement that contains an arbitration clause. *Id.* at ¶ 13-14.

{¶ 26} With respect to Miller's children, this case presents a situation in which nonsignatories to an arbitration agreement are seeking to compel arbitration against other nonsignatories. A review of the arbitration agreement demonstrates that neither Mark Miller (individually), Kimberly Gonzalez, nor Katrina Miller signed the agreement. Even assuming without deciding that the Saybrook defendants are all agents and employees of Saybrook Landing and thus bound by the arbitration agreement and able to enforce it, the Saybrook defendants have not explained how plaintiffs-appellees can be bound by an agreement that none of them signed. The Saybrook defendants make no argument that plaintiffs-appellees are bound under any of the five theories discussed above, and we find nothing in the record demonstrating that they would be bound under any of the theories.

{¶ 27} Moreover, the arbitration agreement specifically limits arbitration to "the Resident and Facility." ("This agreement sets forth a resolution procedure by

which the Resident and Facility intend to resolve all disputes * * *.") Significantly, the agreement contains no language whatsoever that the agreement to arbitrate disputes applies to Lori Miller's heirs, beneficiaries, successors, and assigns. We recognize that in the section regarding the "Binding Nature of Arbitration," the agreement states that "[t]here shall be no appeal of the arbitrator's decision by either party. The decision of the arbitrator shall be binding on all of the parties to the arbitration, and also on their successors and assigns." This provision applies only to the binding nature of the arbitrator's decision after a dispute has been arbitrated, however; it does not apply to the agreement itself to arbitrate disputes.

{¶ 28} When confronted with an issue of contract interpretation, courts should give effect to the intent of the parties to the agreement. The court examines the contract as a whole and presumes that the intent of the parties is reflected in the language used in the agreement. *Martin Marietta Magnesia Specialties, L.L.C. v. PUC of Ohio*, 129 Ohio St.3d 485, 2011-Ohio-4189, 954 N.E.2d 104, ¶ 22. Although Saybrook Landing apparently knew how to draft provisions of the agreement to make them applicable to the resident's successors and assigns — as evidenced by the "Binding Nature of Arbitration" clause — it included no such language anywhere in the agreement making the agreement as a whole, or specifically the resident's agreement to arbitrate disputes, binding upon the resident's heirs, beneficiaries, successors, and assigns. Accordingly, examining the arbitration agreement as a whole, we find no intent by the parties to make the agreement binding upon a resident's heirs and beneficiaries and thus, conclude that although Miller's signature

on the arbitration agreement bound herself to arbitration, it did not bind her children.

{¶ 29} Furthermore, despite the reference in the arbitration agreement to a "personal representative" for Miller, there is no argument that any of Miller's children were her "personal representative" for purposes of the agreement. Although the agreement provides that "the personal representative of the resident" has the right to cancel the agreement within 30 days of signing and further, and that the representative may bring disputes regarding the nonpayment or overpayment of fees in court, no personal representative for Lori Miller is named in the arbitration agreement and no personal representative for Miller signed the agreement. Accordingly, the arbitration agreement cannot be enforced against plaintiffs-appellees Mark Miller, individually; Kimberly Gonzalez; and Katrina Miller.

### B. Mark Miller, as administrator for the Estate, is not bound by the arbitration agreement

{¶ 30} We also conclude that the agreement cannot be enforced against plaintiff-appellee Mark Miller, as administrator for Lori Miller's estate.

{¶ 31} First, as noted above, the Saybrook defendants raised no argument whatsoever in the trial court regarding how they could enforce the arbitration agreement despite being nonsignatories to the agreement. Although they now contend on appeal that they can enforce the agreement as "employees and agents" of Saybrook Landing, they made no such argument in the trial court. Reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed. *State ex rel. Qurto Mining Co. v. Foreman*, 79 Ohio St.3d 78,

81, 679 N.E.2d 706 (1997). Thus, we cannot address this argument for the first time on appeal.

{¶ 32} Furthermore, although the arbitration agreement specifically states that it applies to claims "arising out of the *Nursing Facility Admission Agreement*," the Saybrook defendants made no argument in the trial court that plaintiffs-appellees' claims arise from that agreement. Although they argue on appeal that plaintiffs-appellees' claims fall within the Nursing Facility Admission Agreement because the complaint alleges there was a "binding contract" for defendants-appellants to provide Lori Miller "adequate and appropriate medical treatment and nursing care," they made no such argument in the trial court. Nor did they demonstrate that Lori Miller was even bound by the Nursing Facility Admission Agreement; they did not provide a signed copy of the Nursing Facility Admission Agreement to the trial court to demonstrate that Miller ever signed the agreement.

{¶ 33} Despite this failure of proof, the Saybrook defendants' argued in the trial court and argue on appeal that the arbitration agreement should be enforced because plaintiffs-appellees' claims fall "squarely" within the "all claims" description in the second sentence of the provision of the agreement regarding "All Other Disputes." But this argument ignores the first sentence of that section, which plainly and unambiguously states, "Any controversy, dispute, disagreement or claim of any kind arising out of, or related to the *Nursing Facility Agreement* (other than the payment of charges as described above) shall be settled by binding arbitration." Although the next sentence of that section describes the type of claims that could

arise from the Nursing Facility Agreement, such as "breach of contract, negligence, medical malpractice, tort, breach of statutory duty, resident's rights, and any departures from accepted standards of care," the "All Other Disputes" provision specifically provides that the claims must arise from or be related to the Nursing Facility Agreement. The Saybrook defendants would have this court simply ignore that requirement of the arbitration agreement. However, "'[i]n interpreting a provision in a written contract, the words used should be read in context and given their usual and ordinary meaning.'" *Pantages v. Becker*, 8th Dist. Cuyahoga No. 106407, 2018-Ohio-3170, ¶ 9, quoting *Carroll Weir Funeral Home v. Miller*, 2 Ohio St.2d 189, 192, 207 N.E.2d 747 (1965). When read in context, the words used in the "All Other Disputes" section are clear and unambiguous that disputes covered by the agreement must arise out of or be related to the Nursing Facility Agreement, a showing that the Saybrook defendants failed to make. And despite the Saybrook defendants' argument otherwise, plaintiffs-appellees' general allegations in their complaint of a breach of contract cannot be considered a stipulation that their claims arise from the Nursing Facility Admission Agreement, or that the Nursing Facility Admission Agreement even existed.

{¶ 34} "Arbitration agreements apply to nonsignatories only in rare circumstances." *I Sports*, 8th Dist. Cuyahoga No. 83349, 2004-Ohio-3113 at ¶ 14, citing *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir.2002). In addition, the party moving for arbitration has the burden of establishing the existence of an enforceable arbitration agreement between it and the party against whom the

moving party seeks enforcement. *Senvisky*, 8th Dist. Cuyahoga Nos. 100030 and 100571, 2014-Ohio-1233 at ¶ 11. The Saybrook defendants failed to demonstrate that they are entitled to enforce the arbitration agreement as nonsignatories to the agreement. Furthermore, even if they were entitled to enforce the arbitration agreement, they have not demonstrated that the agreement applies to plaintiffs-appellees' claims. Accordingly, the trial court did not err in denying their motion to stay proceedings and compel arbitration. In light of our holding, we find no need to address any other outstanding issues that were raised. Defendants-appellants' assignment of error is overruled.

{¶ 35} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

SEAN C. GALLAGHER, P.J., and
EILEEN A. GALLAGHER, J., CONCUR